## LUTHER P. SARGENT *vs.* JESSE K. WEBSTER.

The directors of an insolvent manufacturing corporation have authority to convey all the property of the corporation to one of its creditors, upon condition that he shall apply the property to the payment of his claim, and pay over the surplus, if any, to the treasurer of the corporation : And such conveyance is not fraudulent, as against other creditors, by reason of its tendency to give a preference.

Unless the by-laws of a manufacturing corporation, or a statute, expressly provide otherwise, the same person may be treasurer and director, and a majority of the directors constitute a quorum, and a majority of the quorum have authority to decide any question upon which they can act.

It is not necessary that the president of a manufacturing corporation should be present at a meeting of the directors, in order to authorize them to transact business.

When a part only of the directors of a manufacturing corporation attend a directors' meeting, and transact business, it is not necessary to the validity of their transactions that it should appear that the absent directors had notice of the meeting : If the contrary do not appear, the legal presumption is that they had notice.

The directors of a manufacturing corporation voted that an assignment of all the property of the corporation should be made to S., one of the stockholders, (who was liable, for a large amount, as indorser for the corporation,) for the payment of his indorsements, and authorized the treasurer to make such an assignment, and sign it as treasurer : The directors, at the same time, voted that a bond should be taken of S., conditioned that the proceeds of the assignment should be applied to the payment of his indorsements, and that the surplus, if any, should be paid

42 *

over to the treasurer, for the benefit of other creditors: The treasurer made a deed of release and quitclaim to S. of all the property, real and personal, of the corporation, and constituted S. the attorney of the corporation, to sue for and recover all money due, and all property belonging, to the corporation: To this deed the treasurer signed his own name, and affixed his own seal, declaring that he acted as treasurer and agent of the corporation, and was duly authorized: S. gave a bond to the corporation, with a condition conformed to the aforesaid vote of the directors, and also gave to the treasurer a power of attorney, authorizing him, in the name of S., to settle all accounts and demands of the corporation against all persons, and to sell and dispose of all the property of the corporation, and receive payment therefor, as S. might himself do: Afterwards, another creditor of the corporation attached part of the personal property assigned to S., as the property of the corporation, and S. brought an action of replevin against the attaching officer. *Held*, that the personal property of the Silk Company passed to S., by the assignment; that he was entitled to the property attached; and that the question, whether that property, though belonging to S., might lawfully be attached, under the Rev. Sts. *c.* 38, § 30, for the debt of the corporation, was not open to the officer.

THIS was an action of replevin, brought to try the title to two hundred and fifteen pounds of raw silk, three pounds of manufactured silk, and a lot of paper boxes. The case was submitted to the court upon the following agreed statement of facts:

On the 7th of May 1845, a writ in favor of Oliver Capen against the New England Silk Company, incorporated on the 16th of March 1836, was put into the hands of the defendant, a deputy sheriff, for service, and he attached the articles replevied in this suit, as the property of said company. The plaintiff, at the time of the said attachment, and at the time when the debt was contracted, on which said Capen's writ was sued out, was a stockholder in said company, the capital stock of which had been fixed, and certified as paid in, and the certificate recorded in the registry of deeds. A notice of the amount of the assessments voted by said company, and actually paid in, and of the existing debts of the company, was published in a part of the edition of the weekly newspaper called the Norfolk County American, issued and bearing date on Friday the 26th day of July 1844, a copy of which notice is in the margin.* About two thirds of the whole

---

* The New England Silk Company, conformably to the 22d section of the 38th chapter of the Revised Statutes of this Commonwealth, hereby give

edition of the paper of the above date had been worked off, before said notice was put into the hands of the printer. The notice was then brought to the printing office, by C. Colt, jr. with a request by him that it might be inserted in that paper. Some objections were made, by the printers, to their inserting it, for the reason that, as so large a portion of the paper was already printed, it would be of no use; but, at the urgent request of said Colt, and with a full knowledge, on his part, of this fact, the press was stopped; other matter was removed; and the notice was inserted and published in the remaining papers of that edition, and was not published in any paper of a subsequent date.

The said Silk Company, about the 11th of March 1845, became insolvent, and the plaintiff was liable for its debts, as indorser or guarantor, to the amount of $10,000 or more, but was not so liable for the debt on which said Capen's writ aforesaid was issued.

The directors of said Silk Company were five in number, C. Colt, sen. being president. On the 17th of March 1845, at a meeting of the directors, at which three only were present, viz. J. H. Cobb, G. Alden and C. Colt, jr. the following votes were passed: "*Voted,* the president being absent, J. H. Cobb be elected president *pro tem.* *Voted,* that in consequence of the heavy loss the New England Silk Company has recently met with by fire, and the heavy amount Luther P. Sargent of New York is on their paper, (which amount being over twelve thousand dollars,) an assignment be made, of all the property whatsoever, belonging to said New England Silk Company, to Luther P. Sargent of New York, for

---

notice that the amount of all assessments voted by said company, and actually paid in, is thirty thousand dollars; and the amount of all existing debts is sixteen thousand, seven hundred $\frac{35}{100}$ dollars.

Published by order of the Company.

C. Colt,
J. H. Cobb, } President and a majority
Geo. Alden, } of the Directors
C. Colt, jr. }

Dedham, July 24th 1844.

the payment of his indorsements ; and we authorize the treas-urer of said company, C. Colt, jr. to have an assignment made out, covering all the property of the company, and sign the same, as treasurer, which shall be binding on said New England Silk Company. *Voted*, that a bond be taken of L. P. Sargent, assignee, to the effect that the proceeds of the assignment be appropriated to pay off his indorsements, and should a surplus remain, the same be paid over to the treas-urer, for the benefit of other creditors."

It does not appear by the records of said company, that the two directors, who were not present at the meeting, at which the above votes were passed, had notice that the meeting was to be held ; and the clerk of the company, by whom, if by any body, said notice was given, cannot now state whether or not they had notice. C. Colt, jr. was the clerk, treasurer and one of the directors of the company.

On the 18th of March 1845, said C. Colt, jr. treasurer of said company, by a deed of that date, in which he styled him-self " treasurer and agent of the New England Silk Company, and in their behalf, being thereto duly authorized," released and quitclaimed to said Luther P. Sargent, his heirs and assigns forever, " all the right, title and interest which said company now have in and to a tract of land in Dedham, con-taining one acre and five square rods, with the ruins and re-mains of their silk factory, recently destroyed by fire, thereon," and did " further remise, sell, assign and set over to the said L. P. Sargent all the goods, chattels and personal estate of the said company, of what name or nature soever, and all debts and sums of money due and owing to said company, and all securities for the same, and all their interest therein ; the same to be liquidated and applied according to the condition of a bond of even date herewith, given by the said L. P. Sargent to the said company." Said deed also constituted said Sar-gent the attorney of the company, to demand, recover and receive all moneys or other property of the company. The concluding words of this deed of assignment were these : " In witness whereof, I the said Christopher Colt, jr. treasurer

and agent for the New England Silk Company, and on their behalf, being duly authorized, have hereunto set my hand and seal, this eighteenth day of March one thousand eight hundred and forty five. Christopher Colt, jr. Seal." A magistrate certified that said Colt "acknowledged the above instrument, by him subscribed, to be *his* free act and deed."

On the same 18th of March 1845, said L. P. Sargent gave to the said Silk Company a bond, with a condition conformed to the vote of the directors, as above set forth.

On the 22d of March 1845, said Sargent gave to said C. Colt, jr. a letter of attorney, authorizing him, in said Sargent's name, to settle and close up all accounts and demands of said company against any and all persons, and to demand, recover and receive any money therefor, and to give acquittances, and to sell and dispose of all the property of said company in Massachusetts, and receive payment therefor, in the same manner that the said Sargent might himself do.

Within a week after the delivery of said deed to Sargent, the plaintiff, K. S. Pearson, as the plaintiff's agent, took possession of the property thereby assigned, including the two hundred and fifteen pounds of raw silk, but not including the other property, replevied in this suit; and C. Colt, jr. subsequently, and before the attachment aforesaid on Capen's writ, took possession, under the power of attorney hereinafter mentioned, of the aforesaid assigned property remaining in Dedham. The three pounds of manufactured silk were in the possession of a person in Canton, at the time of the attachment, and neither that nor the lot of paper boxes was taken possession of by the plaintiff, any further than the general possession taken, as above, by the plaintiff's attorneys, of the articles above named, constituted, in law, a possession of the same.

The writ, on which said property was attached, was duly returned into court, and judgment was rendered thereon against said Silk Company, upon which an execution issued, and was put into the defendant's hands, within thirty days after the rendition of judgment, and by him levied on said

property, which was taken from him, on the plaintiff's re plevin writ, before sale.

*D. A. Simmons*, for the plaintiff.

*J. J. Clarke & M. S. Clarke,* for the defendant.

SHAW, C. J. The plaintiff claims property in the goods replevied, consisting of wrought and raw silk, and paper boxes, under a conveyance from a manufacturing corporation, styled the New England Silk Company. The defendant justifies under an execution against the said company in favor of creditors of the company.

It appears that the plaintiff was a creditor of the company, for advances, and was surety and indorser, to a large amount on their outstanding securities ; that after their principal building was burnt, they were insolvent and unable to pay their debts; and that at a meeting of the directors, March 17th 1845, they passed a vote, reciting these facts, and that the plaintiff, as their indorser, was on their paper to an amount over $12,000, and declaring that an assignment be made to him of all the property whatsoever, belonging to the company, for the payment of his indorsements, and authorizing the treasurer of the company, C. Colt, jr. to make and execute such assignment, which should be binding on the company ; and that a counter bond be taken of the plaintiff, binding him to apply the proceeds of the property to the payment of such indorsed notes, and to account for such application, and pay over the balance, if any. The treasurer made and executed such assignment, in his own name, and under his own seal ; and the plaintiff executed the counter bond, as required. Subsequently, and before the attachment and seizure made by the defendant, the plaintiff executed and delivered to the said C. Colt, jr. a letter of attorney, with full power to take, hold and dispose of all the assigned property, for his use and in his name.

Several objections were taken by the defendant to the plaintiff's title.

1. The first is, that the deed of the treasurer, in his own name, though he had a sufficient power, was inoperative to

pass the title of the corporation; that it should have been executed in the name of the corporation, and under their seal.

If a deed were necessary, in this case, to pass the property, there would be great weight in this objection; but the vote of the directors was, in effect, an agreement of transfer, when accepted by the plaintiff, and the effect of the assignment of the treasurer, who had the care and control of all the property, was little more than to hand the property over, pursuant to the vote. The power of attorney, given by the plaintiff to Colt, jr. was an acceptance of the assignment, and vested the personal property in him, without the deed. A different rule may apply to the real estate, as to which we give no opinion. When the objection is to the legal sufficiency of the execution of an instrument, although in form entire, it may be good in part and void in part, as the conveyance is sufficient in regard to one species of property, and not to another. Such was the effect of a will, executed without three witnesses, before the statute; and by statute it was altered upon obvious considerations of policy.

2. It was objected, that the directors had no authority, by their vote, to make such conveyance, or authorize the treasurer to make it; but that it must be done by the stockholders. We think this objection is not well taken. The directors, we think, had an authority to make a conveyance of all their property provisionally, and upon condition to pay, or provide for the payment of the just debts of the corporation, with proper security that no more should be applied by the assignee, than enough to pay those debts.

3. Another objection is, that such a conveyance could not be made by the stockholders; because it would tend to give a preference, and thus be fraudulent against other creditors.

Such a conveyance would now be fraudulent, if made by an individual, because it would be repugnant to the letter and spirit of the insolvent laws. But as corporations are not subject to the insolvent laws, and the law stands, in regard to them, as it did before, these provisions do not apply. Nor does it appear that the proceeding was not in furtherance of

the purposes of the incorporation. It was a trading corpora-ion; and one of these purposes was to pay their debts, to enable them either to go on successfully again by the aid of new assessments, or to wind up and settle, upon terms most advantageous to the stockholders.

4. It is objected, that there was not a majority of the directors present, when the vote was passed; because, though three were present, out of five, yet C. Colt, jr. was not eligible as a director, because he was treasurer. We see no ground for this objection. A cashier of a bank is not competent to be a director; but it is because it is so expressly provided by statute. In ordinary cases, when there is no other express provision, a majority of the whole number of an aggregate body, who may act together, constitute a quorum, and a majority of those present decide any question upon which they can act.

5. Another objection of the same kind is, that it does not appear that notice of the meeting was given to all the directors. But the contrary does not appear; and it would be hazardous to decide that every vote, passed by an aggregate body, is void, if it do not appear by the record that all were notified. We believe it is not usual, in corporate records, to state how the members were notified. The presumption, "*omnia rite acta,*" covers multitudes of defects in such cases, and throws the burden upon those, who would deny the regularity of a meeting, for want of due notice, to establish it by proof.

6. It is objected, that the president was not present at the meeting at which the vote authorizing the assignment was passed. We cannot perceive the force of this objection. "The president and directors" is a convenient and very common mode of designating the board of directors, in their aggregate capacity; but it does not render the presence of the president essential, unless otherwise required by the charter or by-laws.

7. But another ground, now taken by the defendant, assumes that whether the assignment were valid or not is

immaterial, because even if the property was the plaintiff's, he was a member of the corporation, whose individual property was liable to be taken to satisfy an execution against the corporation, and so the defendant was justified in taking it as his property, by force of the Rev. Sts. *c.* 38, § 30.

In the first place, it is very clear that the plaintiff, Sargent, though a member of the corporation, had a right to deal with them as with a person and body politic. He could take security or attach property, or take any other measure that another creditor could ; and though he might be liable, in a qualified way, for the debts of the corporation, it was a special liability created by statute, and one which can be enforced only in the mode provided by statute. *Peirce* v. *Partridge,* 3 Met. 44. But we think the question, whether this property could have been seized as the property of Sargent, on an execution against the corporation, on the ground that he was a member, is not open in the present case, because it was seized as the property of the corporation, liable for its own debts, and as their property, of which no conveyance had been made, valid as against creditors. The two claims are not only different from each other, but they are repugnant. Taking it as the property of the corporation disaffirmed the validity of the conveyance to Sargent, and held it to be void as to them. Claiming it as Sargent's property would have affirmed that conveyance, and precluded the attaching creditors, for whom the defendant acted, from questioning that conveyance. Yet in this suit, most of the grounds have been taken, which could be taken, to show that the plaintiff took no property, as against creditors, by that conveyance.

Besides ; the rights and remedies of the plaintiff would be entirely different. If taken as the property of the plaintiff upon his liability as stockholder, he would have a right of action, for reimbursement, against the corporation, and a remedy in equity for a contribution against all the other members. But if taken as the property of the corporation, the debt of the corporation would be satisfied out of their own property, and the plaintiff would be without remedy

although his title was good, and the property conceded to be his by the conveyance.

We have therefore not thought it necessary to consider and decide whether the plaintiff was liable as a member of the corporation. He was so liable, unless the corporation had complied with the provisions of the statute, (Rev. Sts. *c.* 38, §§ 17, 18, 22,) in recording and publishing a certificate, so as to take away this individual liability. Speaking for myself only, it may be proper to say, that so far as this depends on the sufficiency of the publication, as set out in the statement of facts, I should think it must fail. A publication in a small portion of the whole circulation of a newspaper, does not accomplish the purpose of public notice intended by the statute to be given. But of this we have not found it necessary to give an opinion.    *Judgment for the plaintiff.*