Judgment reversed, and new trial granted; costs to the appellant to abide the event. All concur, except HOUGHTON, J., who dissents.

---

(67 App. Div. 375.)

### In re BRENNER.

(Supreme Court, Appellate Division, Third Department. December 31, 1901.)

1. PUBLIC OFFICER—SUMMARY PROCEEDINGS—DELIVERY OF BOOKS AND PAPERS.
   The summary proceedings to compel the delivery of books and papers to a public officer, authorized by Code Civ. Proc. § 2471a, are not a substitute for a writ of quo warranto, nor intended to try title to an office.
2. SAME—PERSON ENTITLED TO REMEDY.
   The summary proceedings to compel the delivery of books and papers to a public officer, authorized by Code Civ. Proc. § 2471a, can only be invoked by one holding a certificate of appointment signed by one having legal authority to issue it.
3. SAME—RECOVERY.
   The applicant for the summary remedy to compel the delivery of books and papers, authorized by Code Civ. Proc. § 2471a, must prevail on his own title, and not on the fact that his adversary has no color of title to the office, owing to the termination of his term.
4. SAME—CONSTITUTIONAL LAW.
   Const. art. 10, § 2, prohibiting the appointment of county officers by other than the board of supervisors or other county authority, apply to such offices, though there has been a change in the name of the office, or a colorable change of duties.
5. SAME—JURY COMMISSIONER.
   The jury commissioner of Kings county is a county officer, within the meaning of Const. art. 10, § 2, prohibiting the appointment of county officers by other than the board of supervisors or other county authority; and Laws 1901, c. 602, authorizing the appointment thereof by justices of the supreme court, is unconstitutional.

Appeal from special term, Kings county.

Application of Jacob Brenner, as commissioner of jurors in the county of Kings, against William E. Melody to compel the delivery of books and papers appertaining to the office of commissioner of jurors. From an order granting the application (70 N. Y. Supp. 744), William E. Melody appeals. Reversed.

On May 13, 1901, pursuant to chapter 602 of the Laws of 1901, a majority of the justices of the appellate division of the supreme court in the Second judicial department made and filed an appointment in writing of the respondent, Jacob Brenner, as commissioner of jurors in the county of Kings. The respondent took the constitutional oath of office on May 14, 1901, filed the same in the office of the clerk of Kings county and in the office of the secretary of state, and then demanded of the appellant, William E. Melody, who was the incumbent of the office, the possession of the books and papers appertaining to such office, and his demand was refused. Thereafter, after a hearing, on the return of an order to show cause made by a justice of the supreme court of the Second judicial district, the said justice made the order from which this appeal is taken.

Argued before PARKER, P. J., and EDWARDS, SMITH, CHASE, and HOUGHTON, JJ.

Robert H. Elder (Charles H. Hyde, of counsel), for appellant.
Henry W. Goodrich (Frank S. Black, of counsel), for respondent.

73 N.Y.S.—44

EDWARDS, J. The application for the order was made under section 2471a of the Code of Civil Procedure. The ground of the resistance of the application was that the appointment of the applicant, under chapter 602 of the Laws of 1901, is in contravention of section ·2 of article 10 of the constitution, and for this reason is void. The learned counsel for the respondent urges two distinct and independent grounds for sustaining the order: First, that the respondent established a prima facie right to the office; and, second, that the act under which his appointment was made is constitutional. He contends that this proceeding is not a substitute for a writ of quo warranto, but is designed simply as a summary remedy in favor of a public officer, establishing a prima facie right to an office, for obtaining possession of the books and papers belonging to the office. It is quite true that the purpose of this statute is not to enable contesting claimants to try the title to an office, but it is equally true and well settled that the statute cannot be successfully invoked unless the title of the applicant is clear and free from reasonable doubt. In re Sells, 15 App. Div. 571, 44 N. Y. Supp. 570; North v. Cary, 4 Thomp. & C. 357; Hodgkinson's Case, 5 Hill, 631, note; People v. Peabody, 5 Abb. Prac. 201; In re Baker, 11 How. Prac. 429; In re Carpenter, 7 Barb. 37. The rule laid down by Kent, C. J., in the Hodgkinson Case, supra, under a statute containing similar provisions, and for which this is a substitute, that "an officer acting under the statute in question has no right to grant the order prayed for, unless the title of the applicant is clear and free from reasonable doubt," has since been frequently cited and· followed. It was undoubtedly a recognition of this principle that prompted the suggestion by Mr. Justice Bartlett in Re Sells, supra, · "where the undisputed facts presented upon the application show beyond substantial doubt or controversy that the election or appointment of the person claiming the books and papers was void," a proper case may arise for the refusal of the relief sought. The mere possession of a certificate of election or of appointment and the taking of the constitutional oath do not establish a prima facie right to an office. The certificate must be signed by some one having legal authority. The opinions of Mr. Justice Herrick in Re Foley (Sup.) 28 N. Y. Supp. 611, and Judge Gray in Re Bradle 141 N. Y. 527, 36 N. E. 598, quoted by the respondent's counsel, are not in conflict with the rule as here stated.· In the former it is said that "where a person produces a certificate of election from the proper election officers," with proof that he has taken and filed the oath and given the undertaking, he is entitled to the delivery of the books and papers of the office; and in the latter that "all the petitioner was required to establish was the fact of his election, as evidenced by the proper certificate, and that he had duly qua fied." It is self-evident that a certificate is not "a proper certificate" which is not made by one having legal authority to issue it. I think the proposition too clear to be controverted that if the justices of the appellate division had no right, under the constitution, to make the appointment under which the plaintiff claims, he does· not hold

a proper certificate, or establish a prima facie right to the posses-
sion of the office.

The respondent's counsel urges that, whether Brenner is legally
appointed or not, at least that part of the act of 1901 which ter-
minates the official existence of Melody is constitutional, and that
he, therefore, has no color of title to the office. While this may be
gravely doubted, the consideration of that question is not here es-
sential. It is a sufficient answer to say that the applicant must pre-
vail, if at all, on the strength of his title, and not on the weakness
of the title of his adversary.

This brings us to the consideration of the question whether that
part of the act of 1901 (chapter 602, § 1) which provides for the
manner of the appointment of a commissioner of jurors in the
county of Kings is violative of section 2 of article 10 of the consti-
tution. The part of the section which it is claimed that the statute
in question offends reads as follows: "All county officers, whose
election or appointment is not provided for by this constitution,
shall be elected by the electors of the respective counties or ap-
pointed by the boards of supervisors, or other county authorities,
as the legislature shall direct." The next sentence of the section
contains a similar provision in respect to the election or appoint-
ment of city, town, and village officers, and the remaining sentence
reads: "All other officers, whose election or appointment is not
provided for by this constitution, and all officers, whose offices may
hereafter be created by law, shall be elected by the people, or ap-
pointed, as the legislature may direct." This section, which is pre-
cisely the same as the corresponding section in the constitution of
1846, has been the subject of judicial construction by the court of
appeals. In People v. Pinckney, 32 N. Y. 377, it is said by Judge
Davis, writing the opinion of the court:

"It is settled by that case [People v. Draper, 15 N. Y. 532] that the officers
and offices designated or intended in the first two sentences of the section
are those 'instituted and existing under actual laws of the state' at the
time of the adoption of the constitution. * * * It will be perceived [said
Denio, J.] that four classes of officers are referred to in the section: First,
those whose election or appointment is provided for by the constitution.
These are named, only to be excluded from the direction given. Second.
Existing local officers,—the then present county, city, town, and village
officers. These are to be chosen by constituencies in their respective locali-
ties. Third. All existing officers whose election, etc., is not provided for by
this constitution, and who are other than county, city, town, and village
officers. And, fourth, all officers of every description, both local and gen-
eral, whose offices were thereafter created by law. * * * People v.
Draper settles also two other propositions: First. That the city, town, or
county office to which the legislature may direct the appointment under the
fourth clause must be created subsequent to the constitution, and not the
officer merely; or, in other words, that 'it is not enough to take the case out
of the provisions of this section that the names of offices existing when the
constitution was adopted are afterwards changed by an act of the legisla-
ture, or that their functions are colorably modified.' The test, therefore,
must be whether the functions conferred are substantially new, in the sense
that they were not exercised by public civil officers at the time the consti-
tution was adopted."

In People v. Raymond, 37 N. Y. 428, which was an action brought
to determine the title of Raymond to the office of commissioner

of taxes and assessments of the city and county of New York, to which office he was appointed by the governor, pursuant to chapter 410, Laws 1867, Judge Grover, writing the opinion of the court, says:

"It is claimed by the counsel of the respondent that the act in question is in conflict with section 2, art. 10, of the constitution, and therefore void. * * * To determine whether the act in question is constitutional so far as the power of appointment is thereby vested in the governor with the consent of the senate, it is necessary to determine whether the office in substance existed at the time of the adoption of the present constitution. * * * The plain intention of the section 'of the constitution in question was to preserve to localities the control of the official functions of which they were then possessed, and this control was carefully preserved, consistent with the power of the legislature to make needful changes by restricting the power of appointment of other officers to perform the same functions to the people, or some authority of the locality. * * * It is not enough that the name of the officer is changed, or the powers enlarged, to authorize the legislature to confer upon the governor the appointment of officers to discharge the duties performed by city officers at the adoption of the constitution."

In the same case Hunt, C. J., says:

"In effect, the legislature have divided the duties of assessors, as they existed in 1846, and have given an important part of them to commissioners of taxes and assessments. The assessors are elected by the city and county authorities, or divisions of them; and, under article 10, § 2, these commissioners must be elected in the same manner. The present law is in violation of this principle."

In People v. Albertson, 55 N. Y. 50, Allen, J., writing the opinion of the court, says:

"The purpose and object of section 2 of article 10 of the constitution, as is very obvious, was to secure to the several recognized civil and political divisions of the state the right of local self-government, by requiring that all county, city, town, and village officers, whose election or appointment was not provided for by the constitution, save those whose offices might thereafter be created by law, should be elected by the electors of the respective municipalities, or appointed by such authorities thereof as the legislature should designate. As to offices known and in existence at the time of the adoption of the constitution, this provision is absolute in its prohibition of an appointment by the central government or its authority, or by any body other than the local electors, or some local authority designated by law. * * * The constitution cannot be evaded by a change in the name of an office, nor can an office be divided, and the duties assigned to two or more officers under different names, and the appointment to the offices made in any manner, except as authorized by the constitution; and courts will scrutinize acts of the legislature, and see that the constitution is not evaded, and its intent frustrated, by a mere colorable change in the designation and title or the duties of an officer, when the appointment is taken from the locality, and will hold the act void unless the change is real and substantial."

In People v. Potter, 47 N. Y. 375, it is said by the court:

"A constitution is to be held as prepared and adopted in reference to existing statutory laws, upon the provisions of which, in detail, it must depend to be set in practical operation."

From these and other authorities which might be cited, it must be regarded as well settled that the purpose of the constitutional provision in question is to secure to localities the fundamental right of self-government; that it protects all official duties existing at the time of its adoption, vested in local officers, and inhibits the transference of such duties to officers not elected by the electors of the locality, or appointed by local authorities; that it is not the

officer, but the office, the existing duties and functions, to which the protection is extended, and which cannot be transferred to an officer elected or appointed other than in the prescribed manner. Nor can this be done by any change of name or colorable change of duties.

Under this construction, it becomes necessary to ascertain the duties of the office in question, and whether substantially the same duties were performed by any officer at the time of the adoption of the constitution and the particular officer on whom the same were devolved.

Prior to 1858, the statute imposed upon the clerk of Kings county the duties of the preparation of the ballots and the drawing of jurors, and provided the manner in which it should be conducted by him. 2 Rev. St. (Edmond's Ed.) 411. By chapter 322 of the Laws of 1858, the legislature provided for an officer who shall be known as the "commissioner of jurors for the county of Kings," "to be appointed by a board, which shall consist of the county judge, the district attorney, the sheriff, the surrogate, and the justices of the court of sessions of Kings county," and imposed upon him the duty of "the selection and summoning of jurors in the county of Kings." The act provided that the commissioner appointed should take and file an oath of office in the county clerk's office; execute a bond to the supervisors of the county, to be approved by the chairman; make an annual report to the board of supervisors; and pay over to the county treasurer, once in three months, all moneys in his hands received as commissioner of jurors. He was authorized to appoint one assistant, and so many more as the board of supervisors might direct; and the supervisors of the county were required to provide suitable rooms and accommodations for his office, to pay his salary and his assistants, and for books, stationery, and other expenses. This act was amended by chapter 378, Laws 1862, which provided that the appointment of the commissioner of jurors for the county of Kings should thereafter be vested in a board consisting of the county clerk, the district attorney, and the surrogate of the county. It was again amended by chapter 821 of the Laws of 1866, which provided that the appointment of the commissioner of jurors for the county of Kings should thereafter be vested in a board consisting of the sheriff, county judge, and district attorney of Kings county, and the judge of the city court of Brooklyn. It was again amended by chapter 315 of the Laws of 1870, which vested the appointment of the commissioner of jurors in the county judge, surrogate, and county treasurer of Kings county, or a majority of them.

The act under which the respondent was appointed commissioner of jurors in Kings county (chapter 602, Laws 1901) provides that "there shall be a commissioner of jurors in each county of the state having a population of one million or more"; and that "each commissioner of jurors appointed under the provision of this act shall be vested, within the county within which he has been appointed, with all power and authority conferred by law upon a commissioner of jurors, or other officer authorized by law to make a list of

persons to serve as jurors, in office at the date of the passage of this act, within the county in which a commissioner of jurors shall be appointed under the provisions of this act; and all provisions of law authorizing a commissioner of jurors, or other officer authorized by law to make a list of persons to serve as jurors in such county, to do or perform any official act, shall apply to the commissioner of jurors appointed under the provisions of this act." It also provides that the rent of the office for the commissioner, the costs of the books and stationery, together with his salary, and the salary of his assistants, clerks, stenographers, and messengers, be a county charge, "and shall be audited and paid as are the compensation and expenses of county officers." It vests the appointment of the commissioner of jurors in the justices of the appellate division of the supreme court in the department in which such county is situated, or a majority of them.

As a result of our examination of the various statutes, it appears that the same essential functions that are by Act 1901, c. 602, required to be performed by the commissioner of jurors therein provided for, were until 1858 performed by the county clerk, and were then transferred by an act of the legislature to a "commissioner of jurors for the county of Kings," appointed by county authorities, who has ever since performed the same substantial duties, and has ever been appointed by county authorities, except that intermediate the amendment of 1866 and the amendment of 1870 the judge of the city court of Brooklyn was permitted to participate with county officers in the appointment. That the duties imposed by the act of 1901 upon the commissioner of jurors are substantially the same as before the act, and before the adoption of the constitution, were imposed upon the commissioner of jurors for the county of Kings, cannot be questioned. This was the view of the learned justice who made the order appealed from, who says in his opinion that "no new office has been created. * * * Additional duties have been added to the service, but the office as it originally existed must be held as having been continued." The essential change is in the manner of appointment, which by the act is made by state instead of local authorities. Although the act of 1901 devolves upon the commissioner some additional duties, this does not authorize the change made in the statute of the appointing power from county to state authorities. As is said in People v. Raymond, supra:

"It is not enough that the name of the officer is changed or the powers enlarged, to authorize the legislature to confer upon the governor the appointment of officers to discharge the duties performed by city officers at the adoption of the constitution."

The learned counsel for the respondent strenuously urges that the duties of the office of commissioner of jurors bear no relation to the county as a political division of the state, and that he is not an officer of the municipality or county, but simply an aid to the court in the discharge of its judicial duties. This was the view taken by the learned justice who granted the order, who says that the commissioner of jurors "performs functions most closely related to, and certainly connected with, the court and the adminis-

tration of justice, though not in any sense of a judicial character." It is quite true that his duties are closely related to the court, and that he is an aid to the court in the administration of justice. This is equally true of the county clerk, who is an officer of the court, and who in other counties performs the same duties, and others of equal importance in their relation to the courts and in the administration of justice; but the duties which he renders are those pertaining to the office of a county officer. A sheriff, in executing the processes and mandates of the court, and in the discharge of other duties, is a very important and indispensable aid to the court; but the duties so performed by him are unquestionably those of a county officer, and, under the inhibition of the constitution, such duties could not be transferred to a new officer not elected by the people of the county, nor appointed by county authorities. I am of opinion that while the commissioner of jurors is closely related to the court, and an aid' to the court, he is also a county officer, performing the same essential duties which at the time of the adoption of the constitution of 1894 were performed by a county officer, and are within the protection of the constitutional provision which secures the performance of such duties to officers elected by the electors of the county, or appointed by county authorities, and that for this reason that part of the act of 1901 which devolves the appointment upon the justices of the appellate division of the supreme court, who are state authorities, is violative of the constitutional provision, and the appointment held by the respondent is therefore void.

The order appealed from should be reversed, with costs to the appellant, and the application is denied. All concur.