(44 Misc. Rep. 247.)

### In re BREARTON.

(Supreme Court, Special Term, Albany County. July, 1904.)

1. **OFFICERS—DELIVERY OF BOOKS AND PAPERS.**

   In a proceeding under Code Civ. Proc. § 2471a, by a person elected city clerk, to compel delivery to him of books and papers withheld by a former incumbent, the court will look into the matter of title far enough to determine whether the petitioner has a prima facie title, though it will not try title to office.

2. **SAME—PRIMA FACIE TITLE.**

   Where a petitioner, in a proceeding under Code Civ. Proc. § 2471a, to obtain possession of books and papers pertaining to an office to which he had been elected, has received a certificate of election or appointment from the proper authorities, he has a prima facie title, entitling him to maintain the proceedings, though his title turned on difficult questions of law.

3. **COMMON COUNCIL—QUORUM—CITY CLERK—ELECTION.**

   Under Laws 1898, p. 373, c. 182, § 17, it is provided that the majority of all the members of the common council of the city of Troy shall be a quorum for the transaction of business, and that the passage of an ordinance shall require an affirmative vote of a majority of its members. Section 2 of the rules of order adopted by the council provides that on the appearance of 10 members the common council shall be called to order. The number of the common council of the city is 17. *Held*, that 9 constituted a quorum, and a majority of the quorum could elect a clerk of the common council and of the city.

4. **CITY CLERK—ACTION—DELIVERY OF BOOKS AND PAPERS.**

   Where all the members of a common council were present at a regular meeting, a person who received for the office of the clerk of the common council and of the city a majority of the votes when a quorum of such members were present, and who received and filed a certificate of his election, executed by the president of the common council, where the former clerk refused to issue one, and filed his oath of office as a prima facie title, may maintain a proceeding to compel the former incumbent to deliver to him the books and papers of the office.

5. **COMMON COUNCIL—ELECTION OF OFFICERS.**

   Laws 1898, p. 377, c. 182, § 33, providing that all appointments or declarations by the common council of the city of Troy shall be by viva voce vote, is complied with when a nomination is made and each member announces his vote for or against it by his voice.

Application by James F. Brearton for an order directing Charles Hagen to deliver books or papers in his possession belonging to the city clerk and the clerk of the common council of the city of Troy, under Code Civ. Proc. § 2471a. Order issued.

Section 15 of chapter 182, p. 372, of the Laws of 1898, being an act for the government of the cities of the second class, provides as follows: "The com-

¶ 3. See Municipal Corporations, vol. 36, Cent. Dig. §§ 207, 208.

mon council shall choose a clerk, to hold office during the term for which its members were elected, unless sooner removed by vote of three-fourths of all the members of the common council." At a regular meeting of the common council of the city of Troy held on the 2d day of January, 1902, Charles Hagen was chosen city clerk and clerk of the common council of the city of Troy, and immediately entered upon the discharge of his duties as such. At the general election held in the city of Troy on the 3d day of November, 1903, a common council was elected, consisting of 17 aldermen. The new common council met for organization on the 2d day of January, 1904, but failed to choose a clerk. Various meetings of the common council were thereafter held, and attempts made to choose a clerk, but more was chosen. Under the provisions of section 5 of chapter 681, p. 1657, of the Laws of 1892, known as the "Public Officers Law," the said Charles Hagen held over in such office of clerk of the common council, and continued to discharge the duties thereof pending the election of a successor. At a meeting of the common council held on the 19th day of May, 1904, the president and 17 aldermen were present. A portion of the minutes of the meeting reads as follows:

"Alderman Fogarty nominated James F. Brearton for clerk.

"Alderman McMurray nominated John T. Graham.

"Alderman Casey nominated Joseph A. Corr.

"Several aldermen left the meeting.

"The vote resulted as follows: Brearton—Aldermen Cahill, Donnelly, Fogarty, Malone, Morrissey, O'Neil—6.

"Graham—Alderman McMurray—1.

"Corr—Aldermen Casey, Luby—2.

"There being no quorum, the meeting adjourned.

"Charles Hagen,

"City Clerk and Clerk of the Common Council."

On the 2d of June a meeting of the common council was held, at which there were present, at the beginning thereof, the president and 17 aldermen. At the beginning of this meeting the president declared the first business in order to be the election of a clerk. James F. Brearton was nominated for clerk. Then a motion was made to lay the matter on the table until later in the evening, which was adopted, and later in the evening Mr. Brearton was again nominated for clerk. A motion was made to lay the matter on the table until the first meeting in October. The president declared the motion out of order. One of the aldermen appealed from the decision of the chair, and the president refused to entertain the appeal. An alderman then moved to adjourn. The president declared the motion out of order, and refused to state it to the council. It was again moved by an alderman that Mr. Brearton be elected clerk. Alderman Casey amended the motion to lay the matter on the table. The president declared the motion out of order. Alderman McMurray nominated F. E. Draper, Jr. Alderman Casey nominated Joseph A. Corr. Alderman Cahill called for a vote on his motion to elect James F. Brearton clerk. The printed minutes of the proceedings of the common council then read as follows:

"The president directed a roll call.

"At this point several aldermen left the chamber.

"The roll call resulted as follows:

"Ayes—Aldermen Cahill, Donnelly, Fogarty, Luby, Malone, Morrissey, O'Neil—7.

"Noes—McMurray—1.

"The president declared James F. Brearton elected clerk.

"The president then declared the meeting adjourned.

"Charles Hagen,

"City Clerk and Clerk of the Common Council."

It is admitted that Alderman Casey was present in the common council chamber when this vote was taken, but did not vote. At the following meeting of the common council motions were made to correct the minutes so that they should read, after stating the vote upon the resolution to elect a clerk, as follows: "It appearing by the roll call that there was not a quorum present and voting there was no election and the meeting thereupon adjourned,"

instead of: "The president declared James F. Brearton elected clerk. The president then declared the meeting adjourned"—as appears in the original printed minutes of the meeting of June 2d. The motion to so correct the minutes failed of passage, and this last meeting of the common council adjourned without either correcting or adopting the minutes of the previous meeting.

On the 2d day of June, 1904, the president of the common council signed and delivered to Mr. Brearton the following certificate:

"This is to certify that James F. Brearton was duly and regularly chosen City Clerk and Clerk to the Common Council of the city of Troy at a regular meeting of the Common Council held this day, and said James F. Brearton was by me duly declared to be so chosen at said meeting.

"Dated, Troy, N. Y., June 2, 1904.                    Thomas F. Dougherty,
"President of the Common Council of the City of Troy."

On the 4th of June, 1904, Mr. Brearton filed and left with Charles Hagen, to be filed in the city clerk's office, his constitutional oath of office as city clerk and clerk of the common council, at the same time making a written demand upon him for all the books, papers, and documents and public records in his possession as city clerk, and all property in his possession as city clerk, and the keys of the city clerk's office, together with the original minutes of the common council meeting of June 2, 1904. In a letter dated June 3, 1904, and signed by him, the said James F. Brearton demanded of Charles Hagen that he issue to him a certificate of his election to the office of city clerk and clerk of the common council of the city of Troy. In response thereto Mr. Hagen said he knew of no such certificate, and, so far as he knew, it was not the custom to give one, and that he did not receive one when he was chosen city clerk. June 10, 1904, the petitioner filed with the county clerk of Rensselaer county a duplicate original of the constitutional oath taken June 3, 1904, and filed in said city clerk's office as before stated.

Section 17 of chapter 182, p. 373, of the Laws of 1898, being an act for the government of the cities of the second class, reads as follows: "The common council shall determine the rules of its own proceedings, and be the judge of the elections, returns and qualifications of its members. Its meetings shall be public and its records open to public inspection, and except as herein provided, the majority of all its members shall be a quorum for the transaction of business. The passage of an ordinance, unless otherwise herein provided, shall require the affirmative vote of at least a majority of all its members." Section 19 provides that no ordinance shall be passed the same day upon which it is introduced, except by unanimous consent; that no appropriation of money shall be made except by an ordinance passed by three-fourths of all the members; that no ordinance shall be passed making or authorizing a sale or lease of real estate or of any franchise except by three-fourths vote of all the members of the common council. There are other provisions in the act requiring more than a majority vote of the common council for specific acts of such council. Section 33, p. 377, of said act, reads as follows: "All appointments or designations made by the common council shall be by viva voce vote." Section 2 of the rules of order adopted by the common council reads as follows: "Upon the appearance of ten members, the common council shall be called to order by the president, or if he be absent, by the president pro tempore appointed by the board."

James F. Brearton, in pro. per. (William J. Roche, of counsel), for the motion.

Lewis E. Griffith, opposed.

HERRICK, J. This is a proceeding under section 2471a of the Code of Civil Procedure. It is not a proceeding to try title to office. Matter of Foley, 8 Misc. Rep. 196, 28 N. Y. Supp. 611; Matter of Sells, 15 App. Div. 571, 44 N. Y. Supp. 570; Matter of Dudley, 33 App. Div. 465, 53 N. Y. Supp. 742; Matter of Bradley, 141 N. Y. 527, 36 N. E. 598; Matter of Brenner, 67 App. Div. 375, 73 N. Y. Supp. 689;

·Id., 170 N. Y. 185, 63 N. E. 133. And while the court will not in these proceedings try title to office, but put the petitioner to his action, still a mere denial by the defendant of the petitioner's title is not sufficient to defeat the proceedings. The court will look far enough into the matter to ascertain whether the petitioner has a prima facie title to the office.

Ordinarily, appointments or election to office are evidenced by certificates of appointment or certificates of election issued by the official making the appointment or by the officials charged with verifying or conducting the election; so that where it appears in a proceeding of this kind that a person claiming office has received a certificate of election or appointment from the proper person or persons, it is held that he has a prima facie title to the office, and is entitled to an order for the possession of the books and papers pertaining to that office. Matter of Foley, 8 Misc. Rep. 196, 28 N. Y. Supp. 611; Matter of Brenner, 67 App. Div. 375, 73 N. Y. Supp. 689; Id., 170 N. Y. 185, 63 N. E. 133. And it has been held that where such a certificate is produced the former incumbent of the office cannot go into questions underlying the election, and which he ¬ay allege as invalidating it. Matter of Bradley, 141 N. Y. 527, 530, 36 N. E. 598. It has been said that it is "well settled that the statute cannot be successfully invoked unless the title of the applicant is clear and free from reasonable doubt." Matter of Brenner, 67 App. Div. 375, 377, 73 N. Y. Supp. 689, 690. Public policy requires that controversies of this character be speedily determined, and for that reason the summary remedy provided by the Code was devised. The fact that the petitioner's title to office turns upon questions of law, and those difficult of solution, will not defeat his right to the order. When the only question is one of law, it can just as well be decided in these proceedings as in any other, and the court will not compel the party to resort to an action, which may not be ended until his term of office has expired, to determine merely a question of law.

The Matter of Brenner was one that depended entirely upon the solution of a legal question, and not a question of fact. That that question was not entirely clear and not easy of solution is evidenced by the fact that there was a sharp division·in the Court of Appeals, two judges thereof dissenting from the decision. It is only when, upon the facts, his prima facie title is not "clear and free from reasonable doubt," that the petitioner will be denied the remedy provided for by section 2471a, and put to his action to settle the question of fact. Here it seems to me that the facts show the prima facie title of the petitioner to be "clear and free from reasonable doubt." The petitioner produces the certificate of the president of the common council that he was duly chosen clerk thereof. The sufficiency of that certificate is challenged. It is said that the office of president of the common council is a purely statutory office, with limited powers and duties, and those specifically defined, and that nowhere is he given power to authenticate or certify to the acts or proceedings of the common council. The city clerk is the official charged with keeping the record of the proceedings of the common council. Section 15, c. 182, p. 372, Laws 1898. And· ordinarily the person charged with keeping a record of proceedings is the one to certify to them. In this case the person so charged is the

defendant, and upon being applied to by the petitioner for a certificate declined to give him one. The petitioner then has produced the certificate of the only officer of the common council who would provide one. The other officer in a position to certify to the proceedings is his adversary.

It would be a travesty upon justice to hold that the petitioner's right to maintain this proceeding can be defeated because his adversary has refused to issue to him a certificate of the proceedings of the common council at which it is claimed he was elected. If it was his duty to furnish it, then he cannot assert his failure to perform his duty to defeat the plaintiff's proceeding against him. But I have not been referred to any provision of law, nor have I been able upon my own investigation to find one, that requires the issuing of any certificate of the election of a clerk of the common council. The statute is silent as to how his election shall be authenticated. No commission, or certificate of election, or appointment is provided for, and where none is provided for none is required. While the courts have held, as above stated, that where an applicant comes with a certificate of appointment or election from the proper officer, and has taken his oath of office, and filed an undertaking where one is required, he has established a prima facie title to the office, and is entitled to an order for the possession of the books and papers pertaining to such office, it has never been held that that is the only evidence of title to office which will entitle him to maintain the proceedings. Where the undisputed facts in the case make out a prima facie title to office, then, even although no certificate of appointment or election is produced, the order will issue. Where no certificate of election is provided for by law, it is evident that such election or appointment may, and, indeed, must, be authenticated to the court in some other manner. In this case there are some undisputed facts, to wit: That the number of the common council of the city of Troy is 17. That at a regular meeting held on the 19th day of May, 1904, the president and 17 aldermen were present. That a number of the members left the meeting. That thereafter a vote was taken upon the election of clerk, and 6 aldermen voted for Mr. Brearton, and 3 other aldermen voted for other candidates; 9 voting in all upon the question of the election of clerk. That at a regular meeting held on the 2d of June the president and 17 aldermen were present. That during the meeting a number of the aldermen left the common council chamber. That thereafter 7 aldermen voted for Mr. Brearton for the office of clerk, 1 alderman voting against electing him clerk, and 1 other alderman, being present, did not vote; 9 aldermen, therefore, being present at the time Mr. Brearton received 7 votes for the office of clerk, and being thereupon declared elected to such office by the president of the common council. What is the legal conclusion from these undisputed facts?

The statute governing the city of Troy, provides as follows:

"The common council shall determine the rules of its own proceedings, and be the judge of the elections, returns and qualifications of its members. Its meetings shall be public and its records open to public inspection, and, except as herein provided, the majority of all its members shall be a quorum for the transaction of business. The passage of an ordinance, unless other-

89 N.Y.S.—57

wise herein provided, shall require the affirmative vote of at least a majority of all its members." Laws 1898, p. 373, c. 182, § 17.

Section 2 of the rules of order adopted by the common council reads as follows:

"Upon the appearance of ten members, the common council shall be called to order by the president, or if he be absent, by the president pro tempore appointed by the board."

The construction heretofore placed upon this provision of the statute, coupled with the rule, by the common council, and apparently by the city officials, is that it requires ten members of the common council to transact business. It was in accordance with that construction that it was announced that no quorum was present when the vote was taken for city clerk upon May 19th, when nine members were present. And that construction is now contended for by the defendant in these proceedings. Of course, the common council can make no valid rules that are in conflict with the statute. It is contended, however, that the words, "except as herein provided," mean not only as provided in the statute, but also as may be provided for in the rules of procedure adopted by the common council by virtue of the preceding clause of the section. That does not seem to me the proper construction to be given to those words. It hardly seems probable that the Legislature, after providing in the act for one thing, should in the same act provide that the common council might, by its rules, nullify that provision. The words in question refer, I think, to the whole act. As we have seen in the statement of facts herein, there are other provisions of the statute requiring more than a majority vote for their adoption by the common council, and the exception mentioned in section 17 obviously refers to the last clause of the section itself, and to the other express provisions of the statute requiring more than a majority vote for the doing of the things specified in such provisions. Furthermore, the reading of the statute is that "the common council shall determine the rules of its own proceedings." That is the method and manner of doing business —how it shall proceed; not who shall do business; not who shall proceed; not who shall constitute the common council. The individual aldermen do not constitute the common council. It is only when they are regularly convened in sufficient numbers that they constitute the common council, and the Legislature has said what that number shall be to constitute the common council. A quorum is the common council. What shall constitute the common council is a part of the fundamental law of the city—a part of its constitution. It is determined by the creator, not by the creature. To the creature is left the making of its rules of procedure after it has come into being, under the statute. I conclude, therefore, that the exception mentioned in the statute does not mean any exception that should be provided for by the rules of procedure adopted by the common council.

In addition it may be said that the rules do not in express terms provide what number shall constitute a quorum, or have power to transact business. The rule in question reads, "Upon the appearance of ten members the common council shall be called to order," etc., and therefore is not in terms in conflict with the statute, although it is

by implication. In this case it appears that at the meetings of May 19th and June 2d, 17 members were present when the meetings commenced, so that the rule was complied with; and 9 were present upon each occasion when the vote was taken for the choice of a clerk. That constituted a quorum, and as such it had power to elect a clerk. "The general rule of all parliamentary bodies is that when a quorum is present the act of the majority of the quorum is the act of the body." McFarland v. Crary, 6 Wend. 298; Sargeant v. Webster, 13 Metc. (Mass.) 497, 46 Am. Dec. 743; Brown v. District of Columbia, 127 U. S. 579, 8 Sup. Ct. 1314, 32 L. Ed. 262; United States v. Ballin, 144 U. S. 1, 12 Sup. Ct. 507, 36 L. Ed. 321. A quorum is, for all legal purposes, as much the body to which it appertains as if every member were present; and, when a quorum has met, an act of the majority of such quorum is an act of the body itself." 23 Am. & Eng. Encyc. of Law, 591. It is claimed, however, that there was no election of clerk at the meeting held June 2d, because there were only eight votes cast, and that that was not a quorum. It is conceded, however, that there were nine present. A quorum being present, it was not necessary that all, or even a majority, of those present should vote. "When a part of the members present refuse to vote at all, a vote may be legally decided by a majority of those actually voting, though they do not constitute a majority of the whole number present. This rule rests upon the principle that members present and not voting will be deemed to assent to the action of those who do vote." 23 Am. & Eng. Encyc. of Law, 592. "Whenever electors are present and don't vote at all, they virtually acquiesce in the election made by those who do." Sudbury v. Stearns, 21 Pick. 148, 154. "The exercise of the lawmaking power is not stopped by the mere silence and inaction of some of the lawmakers who are present." Attorney General v. Shepard, 62 N. H. 383, 13 Am. St. Rep. 576; approved United States v. Ballin, 144 U. S. 9, 12 Sup. Ct. 507, 36 L. Ed. 321.

The defendant in these proceedings further contends that the election was illegal, because, as he claims, section 33, p. 377, of chapter 182 of the Laws of 1898, requiring the election to be by viva voce vote, was not complied with. His contention, as I understand it, is that each man should orally name his choice for clerk. It will be observed that that was done at the meeting of May 19th. While that is a compliance with the requirement, it is not the only way in which it can be satisfied. The term "viva voce," when applied to elections, is used in opposition or contradistinction to the ballot, and simply means that the voter shall declare himself by voice, instead of by ballot. In this country, as a general rule, the people vote by ballot, so that their action may be secret, free, and untrammeled; their representation viva voce, so that their action may be public and known to their constituents. So that when a nomination is made either by written resolution or oral motion, and each person announces his vote for or against it by his voice, the vote is viva voce. The manner of choosing a clerk in this case was left to the discretion of the common council so long as the vote was viva voce. It could have been done by calling the roll, and each member naming his choice, or by placing candidates in nomination, and then calling the roll of members, as was done at the meeting of May 19th, or by naming

a candidate by resolution and calling the roll, and the members orally voting for or against it, as was done at the meeting of June 2d. Any of these methods would be voting viva voce. The principle of public, not secret, voting would be complied with.

Complaint is made of the alleged arbitrary action of the president of the common council in refusing to put motions, made by different aldermen, to the common council to be acted upon; particularly a motion to adjourn. As we have seen in Matter of Bradley, 141 N. Y. 530, 36 N. E. 598, where the petitioner shows a prima facie title the former incumbent will not, in these proceedings, be permitted to go into questions underlying the election, and which he may allege invalidate it. So here, it appearing that a majority of those entitled to choose a clerk have voted for the petitioner, the court will not, in this proceeding, inquire into what preceded the vote upon that question. There is no complaint of any arbitrary or improper action at the meeting of May 19th, and it does not appear that any votes were forced in favor of the petitioner by the action of the president at the meeting held June 2d. It may not be out of place to say that the way to check or defeat the arbitrary action of a presiding officer is not to run away from the meeting, unless in sufficient numbers to leave the meeting without a quorum. The orderly way—the only safe way, as this proceeding demonstrates—is not to abandon the meeting, but to contest the alleged arbitrary action by legal and parliamentary methods. The majority can always rule. If temporarily overridden by arbitrary action, the courts will rectify the wrong and enforce its right.

It appearing, then, from the undisputed facts in the case, that at the meetings of May 19th and June 2d, when there were a sufficient number of aldermen present to constitute a quorum, and therefore to constitute a common council, a majority of those present upon each occasion voted viva voce for the election of James F. Brearton as city clerk and clerk of the common council, it must be held that a prima facie title to that office is established in his favor, and that the order prayed for should be granted, with costs of these proceedings. Let an order be entered accordingly.

Ordered accordingly.