EWING v. McGEHEE.

Opinion delivered October 5, 1925.

1. STATUTES—PRESUMPTION AS TO PASSAGE OF BILL.—An enrolled act in the office of the Secretary of State, signed in due form by the presiding officers of the two houses of the Legislature and by the Governor, is *prima facie* evidence of the regular enactment of the law, and is conclusive evidence thereof, unless the legislative journals affirmatively show that the two houses failed to enact the statute in the constitutional manner or that the two houses did not agree upon the same measure.

2. STATUTES—OMISSIONS OF RECITALS FROM JOURNALS.—Mere omissions from legislative journals of recitals of the various steps in the enactment of a statute, except as to the requirement with regard to recording the ayes and nays on the final passage of the bill, do not invalidate a statute duly enrolled and signed by the Governor.

3. STATUTES—RECORDING VOTE.—The constitutional requirement of recording the ayes and nays on the final passage of a bill has no application to concurrence in amendments.

4. STATUTES—VARIANCE BETWEEN JOURNAL AND ENROLLED BILL.—It is immaterial that the Senate journal shows that a House bill was amended in the Senate by striking out sections 2 and 3 when the enrolled bill signed by the Governor shows that sections 3 and 4 were stricken out, where it appears from the recitals of the Senate journal and the language of the enrolled bill that the Senate struck out sections 3 and 4, instead of 2 and 3.

5. STATUTES—VARIANCE BETWEEN JOURNAL AND ENROLLED BILL.— Where the Senate journal shows that a bill relating to a road improvement district was amended by adding a commissioner, but the enrolled bill fails to show that such commissioner was named, it will be presumed that the recital as to such commissioner was a clerical misprision.

6. HIGHWAYS—AMENDMENT OF GENERAL STATUTE.—It was within the Legislature's power to amend a general highway statute by a local and special act declaring a certain road "a part of the system of primary and secondary roads" of the State and authorizing payment out of the funds of the district for work already done which could be utilized as a benefit to the district.

Appeal from Desha Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*I. N. Moore* and *Coleman, Robinson, House & Riddick,* for appellant.

*Abner McGehee,* for appellee.

McCULLOCH, C. J. The General Assembly of 1923 enacted a special statute (Special acts 1923, p. 1721) creating a road improvement district in Desha county designated as the "McGehee East and West Highway District." The statute contained thirty sections, including the last section embracing the emergency clause, and was in the usual form in vogue in the creation of road districts by special statute. Section 2 designated the title of the district, which was declared to be a body corporate, named the five commissioners, and provided that the county judge should be ex-officio a member of the board as chairman without a vote except in case of a tie. Section 10 of the statute related to assessment of benefits and conferred authority upon the commissioners to make

such reassessments annually in the manner prescribed for the making of original assessments.

A statute was enacted by the General Assembly of 1925 (act No. 182) amending the act of 1923, *supra,* creating the road improvement district in question, and the validity of that statute is attacked in an action instituted in the chancery court of Desha County by appellee against appellants who are named in the last statute as commissioners. The chancery court sustained the attack upon the validity of the statute and declared it void, and an appeal has been prosecuted to this court.

The first attack on the validity of the statute is on the ground that the journals of the two houses of the General Assembly do not show that the same bill was agreed to in each house, and that certain amendments to the original bill adopted in the Senate were not incorporated into the enrolled bill as signed by the Governor and filed with the Secretary of State.

We have examined the record of the Legislature, which is preserved in the office of the Secretary of State for the purpose of determining whether or not the attack on the validity of the statute is well founded. The statute as enrolled and signed contains four sections, numbered, respectively, 1, 2, 5 and 6. Section 1 amends section 2 of the original statute, and section 2 amends section 10 of the original statute; section 5 is new matter incorporated into the original statute by this amendment, and section 6 contains only the emergency clause. It is contended that the bill for the statute as originally introduced contained six sections, numbered consecutively from 1 to 6. There is no evidence of the contents of the original bill as introduced except references on the Senate journal to sections 3 and 4. The original bill was not preserved by the engrossing committee, and the bill on file with the Secretary of State is precisely the same, word for word, as the enrolled bill signed by the Governor, though the wrapper bears indorsements of the clerk of the House and secretary of the Senate showing amendments to the original bill and the progress of the bill

through both houses. The only inference that can be drawn from the record that we find in the Secretary of State's office is that, after the adoption of the amendments and concurrence therein by the other house, the engrossing committee took the wrapper off the original bill and placed it on the engrossed bill and then destroyed or failed to preserve the original bill. The bill was introduced in the House as Bill No. 60, and the journal of that body shows that it was duly passed. The Senate journal shows that on February 12 two amendments were adopted—one amending section 4 by striking out certain words and inserting other words in lieu, thereof, and the other striking out the name of one Sam Wolchanski as one of the commissioners named in section 1 and inserting the name of J. W. Willoughby. The Senate journal of February 13 shows that an amendment was offered and adopted striking out the names of Wolchanski and A. Z. Zelhner from section 1 and incorporating another sentence in that section, and that the bill was passed as amended and transmitted to the House. The journal of the House fails to show the return of the bill, but the indorsements of the clerk of the House on the bill shows that it was returned to the House and the Senate amendments adopted.

The only constitutional requirement with reference to the record of the passage of a bill on the journals of the two houses of the Legislature is that the ayes and nays shall be called on the final passage of a bill and entered on the journal. Constitution, art. 5, § 22.

It has long been the rule in this State that an enrolled statute in the office of the Secretary of State, signed in due form by the presiding officers of the two houses of the Legislature and by the Governor is *prima facie* evidence of the regular enactment of the law, and is conclusive evidence thereof except with respect to the things which the Constitution requires shall be affirmatively shown on the record, unless the legislative journals affirmatively show that the two houses failed to enact the statute in the Constitutional manner or that the two houses did not agree

upon the same measure. *Chicot County* v. *Davies,* 40 Ark. 200; *Mechanics B. & L. Assn.* v. *Coffman,* 110 Ark. 269; *Desha-Drew Rd. Imp. Dist.* v. *Taylor,* 130 Ark. 503; *Marshall* v. *Baugh,* 133 Ark. 64; *Perry* v. *State,* 139 Ark. 227. In other words, there is a conclusive presumption of the regularity of the enactment of an enrolled and signed statute unless the validity is defeated by affirmative recitals in the journal. Mere omissions from the journal of recitals of the various steps in the enactment of a statute, except as to the requirement with regard to recording the ayes and nays on the final passage of the bill, do not discredit or invalidate a statute duly enrolled and signed by the Governor. Applying this rule in the present instance, we do not think that the validity of the enrolled statute can be successfully challenged on the ground that it is in conflict with the affirmative recitals of the journal. This is true when we indulge the presumption which we should indulge in order to give full faith and credit to the record on file in the office of the Secretary of State. It is true that the journals of the House do not contain a recital of the concurrence by the House in the Senate amendments, but there is no affirmative recital showing that the amendments were not concurred in or that the bill was enrolled without further action of the House, and, on the contrary, the indorsement of the clerk on the bill shows that the amendments adopted by the Senate were concurred in by the House, hence we must presume that there was a concurrence by the House in the Senate amendments.

The Constitutional requirement with respect to recording the ayes and nays on the final passage of a bill has no application to the concurrence in amendments. *State* v. *Corbett,* 61 Ark. 226.

It is earnestly contended by counsel for appellee that the journals of the Senate affirmatively contradict the enrolled bill and show that it is not in accordance with the amended bill passed in the Senate, for the reason that the Senate journal shows that sections 2 and 3 of the original bill were stricken out, whereas the enrolled bill con-

tains section 2. A careful analysis, however, of these recitals on the journal carries the conviction that it was a mere clerical misprision of the clerk, and that the purport of the Senate amendments was to strike out sections 3 and 4 and to amend section 5 instead of striking out sections 2 and 3 and amending section 4. The journal recites the amendments of section 4 in certain particulars, and the language contained in those amendments was carried into section 5. We do no violence to settled rules for the ascertainment of the validity of legislative action and the record thereof by considering these matters in determining whether or not in fact the Senate passed a bill different from the one now enrolled and signed and filed in the Secretary of State's office. These matters are considered, not for the purpose of defeating the legislative will, but for the purpose of identifying the amendments which were in fact proposed and adopted. *Butler* v. *Kavanaugh*, 103 Ark. 109.

The application of the same rule must be made as to the contention with respect to the Senate amendment striking out the name of Wolchanski as one of the commissioners and inserting the name of Willoughby. Neither the engrossed bill nor the enrolled statute contains the name of Wolchanski or Willoughby, and, as the indorsements on the engrossed bill show that the bill as amended is in identical form and language as the enrolled bill, we must indulge the presumption that the recital with respect to the insertion of the name of Willoughby was a clerical error.

It is also contended that the statute is void because the caption does not refer to all the matter contained in the body of the act. There is no provision in the Constitution of this State with respect to what the caption of statutes shall contain. Our Constitution does not contain a provision so often found in State constitutions to the effect that statutes shall embrace only one subject, which shall be clearly stated in the caption. Conceding that a statute is void which undertakes to legislate with reference to unrelated subjects, we do not find that the present

statute is open to that objection. The whole subject of the statute is in regard to the particular road district mentioned, and it expressly amends certain sections of the former statute and incorporates new provisions in other sections. The whole subject-matter of the new statute is to amend the old statute, and all of the matters contained in the statute are germane. There is no vagueness or uncertainty in the statute, and, as it appears enrolled in the office of the Secretary of State, it seems to clearly express the legislative will.

The validity of section 5 of the statute is attacked on the ground that it declares the road to be improved a State highway, as "a part of the system of primary and secondary roads," and authorizes the payment by the commissioners for work already done on the improvement. We perceive no reason why either of those provisions are invalid. The argument is that it is an indirect amendment of the general State highway statute known as the Harrelson Law, but, even so, it was within the power of the Legislature to thus amend the general statute, even though done through the operation of local and special legislation. And it was within the power of the Legislature to authorize payment out of the funds of the district for work already done which could be utilized as a benefit to the district. *Road Improvement District* v. *Brown*, 156 Ark. 267; *Hiter* v. *Haralson Bridge Dist.*, 165 Ark. 351.

This answers all of the attacks made by appellee as to the validity of the statute, and our conclusion is that the chancery court erred in sustaining the attacks.

The decree is reversed, and the cause remanded with directions to dismiss the complaint of appellee.