Opinion delivered June 15, 1931.

*Baker & Gautney, Denver L. Dudley* and *Joe C. Barrett,* for appellant.

*E. L. Westbrooke, Eugene Sloan, John W. Gann* and *Arthur L. Adams,* for appellee.

SMITH, J.   Drainage District No. 18 of Craighead County was organized by the county court of that county under the provisions of the statute known as the Alternative System of Drainage Districts, § 3607 *et seq.,* Crawford & Moses' Digest, and the benefits assessed by the commissioners under the authority of that act were approved and confirmed by the county court in 1919.

After the construction of the improvement, it was found that the lands in the lower or southern end of the district had not received the anticipated benefits, by reason of an insufficient outlet for the drainage, and the commissioners undertook to reassess the benefits of all the lands in the district to conform to this condition.

No change in the sum total of the betterments was made, but the commissioners claim that they have equalized the betterments by the reassessment thereof to conform to the actual betterments received, rather than to the benefits anticipated at the time of the original assessment, which, according to subsequent developments, appear to be inaccurate and unequal.

The upper proprietors resisted the reassessment in both the county court and the circuit court, where the cause was heard upon a stipulation, which recites the essential facts and from which we copy the following statements:

"It is stipulated and agreed by and between the said exceptors and objectors * * * and the commissioners * * * that because of circumstances, developments and events not known to or in contemplation of the parties involved when the original assessment of benefits was made in said Drainage District No. 18, the plan of drainage as then contemplated could not be and was not carried out, nor were the actual benefits realized to certain of the lands which were contemplated as a result of the improvement when original assessment of benefits was made and filed. That among the particular incidents or developments not known, contemplated or anticipated at the time of such original assessment of benefits was the construction of what is generally known and termed as the lock and dam in Poinsett County, Arkansas, as a part of the improvement constructed by Drainage District No. 7 of Poinsett County, Arkansas, adjacent to said Drainage District No. 18. That the construction of said lock and dam and other developments and conditions have made it impossible to supply the drainage to certain lands in the lower or south end of this District No. 18 which was in contemplation of parties when the original assessment was filed and confirmed. That certain of the lands so situated in said district have, for reasons above indicated, been frequently overflowed and at all times subject to overflow or damage by water to an extent which has

hindered their clearing and development, or their cultivation, and in many instances has entirely prevented it. The reassessment of benefits as proposed to be made under act No. 47 of the Acts of 1929, undertakes to redistribute the burden of assessments in accordance with these conditions, and results in a shifting of assessment which substantially adds to the assessment of benefits upon some lands in the upper or north end of the district, raising it substantially above that fixed by the original assessment, and lowering it substantially on other lands in the lower or south end of the district.''

The circuit court found that the district was without authority to make the reassessment, and sustained a demurrer to the petition therefor and dismissed the reassessment proceeding, and this appeal is from that order and judgment.

It is conceded by the district that the reassessments cannot be made unless authority therefor is found elsewhere than in the Alternative Drainage District Act under which District 18 was organized, as no such authority was conferred by that act. The protesting landowners insist that no such authority has been conferred, and they also contend that legislation conferring that authority would be unconstitutional if such legislation had been enacted.

We have before us only the question of the power of the district to reassess betterments and the constitutionality of legislation authorizing the reassessment if it exists.

In the chapter on Reassessments and Revisions in the excellent work on improvement districts in Arkansas by Sloan, it is said at § 967, under the title, ''Alternative System Drainage Districts,'' page 854, that ''in 1927 the following power was conferred on alternative system drainage districts: 'The commissioners of the districts aforesaid shall have the power to make a reassessment of the benefits not oftener than once a year, and such reassessment shall be made, advertised, and equalized as

is provided for the original assessment of benefits; and all appeals of landowners objecting thereto must be taken and perfected within thirty days from the time of the action of the county court thereon.' ''

The act referred to is act 203 of the Acts of 1927, page 680, entitled ''An act in aid of drainage districts.''

We need not consider whether that act confers the power of reassessment here sought to be exercised, as the particular statute upon which the drainage district here especially relies, and under which it proceeded in making the reassessments, is act 47 of the Acts of 1929 (Vol. 1 Acts 1929, page 94). This act has the following title: ''An act authorizing the funding of bond indebtedness of any levee or drainage district and authorizing reassessment of benefits in such districts.''

It is insisted that this act should be construed with reference to its title, and that, when so construed, it should be interpreted as meaning that the reassessment which § 4 thereof contemplates is authorized and can only be made in connection with the funding or refunding of the bonded indebtedness of a levee or drainage district, and that authority to reassess is conferred only in such cases, and that, inasmuch as it is not claimed that district 18 is attempting to refund its indebtedness, the act does not apply.

Section 4 of act 47 reads as follows: ''A reassessment of benefits may be made in any levee or drainage district in the State, whether created under general law or by special act of the Legislature, not oftener than once a year, and such reassessment shall be made by the commissioners or directors or assessors, respectively, of such district as was authorized for the original assessment therein, and such reassessment shall be made in the same form, after the same notice, hearing and rights of appeal as were provided for the original assessment of benefits in such district, and with the same time limitation on rights of appeal and suits attacking the assessment of benefits in such district as provided for the origi-

nal assessment of benefits, and installments thereof levied, extended and collected at the same time, in the same manner, by the same officers, and with the same lien and penalties for delinquencies as were provided for the original assessment. If in any such levee or drainage district the original assessment of benefits was made by assessors, the board of directors or commissioners of such district shall have the power to fill any vacancies in the board of assessors; or, if in any such district the power of the board of assessors was exhausted on making the original assessment, the board of commissioners or directors of such district shall have the power to appoint a new board of assessors composed of the same number and with the same qualifications as the original board, such new board to have all powers to make the reassessments herein provided for as were conferred on the original board of assessors.''

It appears that § 4 of the act, if read by itself, confers the authority to reassess in unmistakable terms, but that section, of course, must be read in connection with the act of which it is a part, and its title is not to be ignored in its interpretation.

In the case of *State* v. *White,* 170 Ark. 880, 281 S. W. 678, it was said that ''the language of the caption of a statute is not controlling, but it has some force in interpreting the meaning of the lawmakers when otherwise in doubt, * * *.'' *Conway* v. *Summers,* 176 Ark. 796, 4 S. W. (2d) 19; *Huff* v. *Udey,* 173 Ark. 464, 292 S. W. 693; *Logan* v. *State,* 150 Ark. 486, 234 S. W. 493; *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45; *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, 212 S. W. 77.

We have concluded that § 4 is not so limited by the title of the act, of which it is a part, as to be applicable only to those districts which are proposing to refund their indebtedness. The section is, of course, applicable to such districts, but we do not think it is limited to them. Section 4 provides that a reassessment of benefits may be made in *any* levee or drainage district,

whether created under general law or by special act, not oftener than once a year. Now, it is usually true that such districts issue bonds to expedite the construction of the proposed improvement, but they are not required to do so, and there may be cases in which they have not done so. If there were such district, § 4 would apply to them.

The alternative drainage act, under which District 18 was organized, does not require such districts to issue bonds. It merely authorizes them to do so. Section 15 of this act (act 279 of the Acts of 1909, page 829), which appears as § 3623, Crawford & Moses' Digest, provides that, "in order to hasten the work, the board may borrow money at a rate of interest not exceeding six per cent. per annum, may issue negotiable bonds therefor, signed by the members of the board, and may pledge all assessments for the repayment thereof."

Another recital not to be ignored, but which, on the contrary, is of the greatest importance, is that the reassessments which § 4 authorizes may be made not oftener than once a year. The taxes are payable annually. It is highly improbable that an annual refunding of the district's indebtedness was contemplated, yet the reassessment may be made "not oftener than once a year."

Did the General Assembly have the power to pass the act? In answer to this question, it may first be said that it is not claimed that the district proposes to impair the security of the holders of the obligations of the district to pay money. On the contrary, it is proposed to increase that security by equalizing the burden of discharging those obligations in proportion to the betterments, or enhanced value, of the lands in the district.

Further answering this question, it was said in the case of *Lee* v. *Osceloa & Little River Road Imp. Dist. No. 1,* 162 Ark. 4, 257 S. W. 370, that, "this court has held that the Legislature may provide for a new assessment of benefits in a drainage district and for a reassess-

ment of benefits of a road district. *Burr* v. *Beaver Dam Drainage District,* 145 Ark. 51, 223 S. W. 362, and *Earle Rd. Imp. Dist. No. 6* v. *Johnson,* 145 Ark. 438, 224 S. W. 965.''

This question was thoroughly considered in the last-cited case, where it was said: ''The question has never been expressly decided by this court, but we hold now that it is within the power of the Legislature to confer authority on an improvement district to reassess the benefits to property in a district. There is no necessary finality in an assessment of benefits to accrue from a local improvement.''

In reaching the conclusion announced in the case of *Earle Improvement Dist.* v. *Johnson, supra,* it was there said: ''Nor can it be said that there are any contractual rights involved in the assessment of benefits which would be impaired by a new determination of benefits; nor does an increase in the amount of assessments under a reassessment constitute a taking of property without due process of law. An appraisal of benefits in advance of the actual realization is a mere anticipation, and we see no reason why there cannot be a subsequent reassessment for the purpose of determining whether or not those anticipated benefits have in fact been realized, or whether in the light of subsequent changes and developments the original assessment was a correct estimate of benefits. Of course, there must be an assessment of benefits before the construction of the improvement is begun in order to determine whether or not the cost of the improvement will exceed those benefits. But the only constitutional or inherent restraint in this regard is that the improvement shall not be constructed until it is found that the cost will not exceed the benefits to accrue to the property from the improvement.

''This is done at the time when the cost of the improvement is a mere estimate as well as the estimate of benefits. If, however, it is subsequently found that the cost of the improvement will be more, there is no restric-

tion upon the right to proceed with the increased cost, provided, it does not exceed the benefits; and there is no legal restriction upon the right to reassess the property for the purpose of determining whether those benefits will be sufficient to meet the increased cost. Hamilton on Special Assessments, § 827. We find, in other words, no legal restrictions upon the power of the Legislature, and we have nothing to do with the policy of the lawmakers in granting authority to improvement districts to reassess benefits from time to time.''

It is finally insisted that, even though authority to make a reassessment was conferred by act 47 of the Acts of 1929, that act has been repealed by act No. 240 of the Acts of 1931, approved March 27, 1931. In support of this argument, it is insisted that act No. 240 of the Acts of 1931 is a recodification of acts 47 and 285 of the Acts of 1929, and therefore repeals both of them.

Act 285 of the Acts of 1929 is entitled ''An act to provide for the funding of the indebtedness of any levee or drainage district, other than bonded indebtedness,'' and reference is made in § 2 of this act to act 47 of the Acts of 1929 as to the procedure whereby its provisions may be made available.

Act 240 of 1931 does contain provisions which appear in both the Acts of 1929, but the act of 1931 does not expressly repeal either of the Acts of 1929, nor does it do so by necessary implication.

We had occasion in the recent case of *Louisiana Oil Refining Co.* v. *Rainwater, ante* p. 482, to thoroughly consider the question of the repeal of a statute by implication, and it will not be necessary to again review the authorities on that subject. It was there held, in conformity with numerous prior decisions, that repeals of statutes by implication are not favored, but that a statute may be repealed by implication when the provisions of the earlier statute are repugnant to each other and irreconcilable, or when the subsequent statute covers the whole subject-matter of the former and is manifestly intended as a substitute for it.

Act 240 of the Acts of 1931, being the last enactment, does, of course, repeal any former act in conflict with it, although it contains no recital of any intention to repeal any act, or any part of an act, but in § 4 of the act of 1929 there is nothing in conflict with the act of 1931, and we therefore conclude that act 47 has not been repealed.

We are reinforced in this conclusion by the legislative history of act 240 of the Acts of 1931, which was approved by the Governor March 27, 1931.

Contemporaneously with the progress of act 240 through the General Assembly was another bill, which was also passed by both Houses of the General Assembly at the same session. This latter was House Bill No. 196, which was expressly intended to repeal act 47 of the Acts of 1929, and had no other object.

The recent case of *Cordell* v. *Kent*, 174 Ark. 503, 295 S. W. 404, was one in which an improvement district sought to refund its bonded indebtedness under the provisions of act 114 of the Acts of 1927, an act entitled, "An act to authorize road improvement districts in the State of Arkansas to refund present indebtedness, and for other purposes." Property owners in the improvement district sought to enjoin the proceedings, upon the ground that act 114 had been repealed by act 126, passed at the same session. The latter act was entitled, "An act to provide for the refunding of the indebtedness of local improvement districts."

The chancellor held that the latter act repealed the prior one, and in reversing his decision we quoted with approval from *Smith* v. *People*, 47 N. Y. 330, as follows: "Statutes enacted at the same session of the Legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia*. Each is supposed to speak the mind of the same Legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect,

so as to give validity and effect to every other act passed at the same session.''

We must, of course, assume that the General Assembly knew what action it had taken and what the effect of that action was. The futility of passing an act to repeal act 47 is therefore apparent, if that result was accomplished by a contemporaneous act. However, House Bill 196, which expressly repealed act 47 of the Acts of 1929, was vetoed by the Governor on April 1, and it therefore never became a law. This was done by the Governor after he had approved act 240 on March 27, and the proclamation of the Governor vetoing House Bill 196, and stating the reason for so doing, did not recite that act 47 of the Acts of 1929 had already been repealed.

Act 47 was not therefore expressly repealed, because the bill having that purpose, and that purpose only, was vetoed by the Governor, and, as we have attempted to show, it has not been repealed by implication.

We conclude therefore that § 4 of act 47 subsists and is in full force and effect as a valid law, and the drainage district is therefore entitled to invoke its provisions in making a reassessment.

The judgment of the court below will therefore be reversed, and the cause remanded, with directions to overrule the demurrer to the petition of the commissioners of the district, and for further proceedings not inconsistent with this opinion.

HART, C. J., and MEHAFFY, J., dissent.