GLENN F. WALTHER *v.* DAVID C. McDONALD Jr.

5-4379                                         422 S. W. 2d 854

Opinion delivered January 22, 1968

*Leon Catlett* and *Glenn F. Walther,* for appellant.

*Arnold & Arnold* and *Abner McGehee,* for appellee.

PAUL WARD, Justice. The issue presented here for decision is whether Glenn F. Walther (appellant) is legally a member of the Arkansas Public Service Commission. Set out below are some of the undisputed background facts which explain how the issue reaches this Court.

The Legislature convened in regular session on Monday, January 9, 1967. On that day Dan D. Stephens was a duly appointed, qualified and acting member of the said Commission.

On January 14, 1967, the term for which Stephens was appointed expired, but pursuant to Ark. Stat. Ann. § 73-101 (Repl. 1957) he continued to hold office "until his successor was appointed and qualified."

On February 9, 1967 the Senate went into the Committee of the Whole, and then into Executive Session, at which time appellant was appointed to succeed Stephens for a term to expire on February 14, 1973. Shortly thereafter (but on the same day) the Governor sent to the Senate the appointment of Jerry Thomasson to the same position on the Commission.

On February 10, 1967 (Friday) the Senate passed a resolution (No. 16) reaffirming its action on the previous day.

On the following Monday (February 13, 1967) the Senate resumed its deliberations (in Executive Session) of appointments by the Governor which began on February 9, and the appointment of Jerry Thomasson by the Governor was rejected because the position had already been filled by the appointment of appellant.

On February 24, 1967, David C. McDonald Jr., a resident, citizen and taxpayer filed a complaint in the Pulaski County Chancery Court, against appellant, the State Auditor, and the State Treasurer, asking the court to declare appellant's appointment illegal and void, and to enjoin the state officers from paying his salary. The complaint alleged, among other things, that the appointment of appellant was illegal and void under the provisions of Ark. Stat. Ann. § 6-601 *et seq.* and § 7-201 *et seq.* (Repl. 1956).

On February 27, 1967 the state officers filed a general denial and on the following day appellant filed an answer denying all material allegations in the complaint and further alleging that his appointment was ''in conformity with the rules and customs of the Senate, the Statutes of the State of Arkansas and the Constitution of the State of Arkansas, and that he is now serving as a legally appointed member of the Public Service Commission since the 10th day of February, 1967.'' He also asked that the complaint be dismissed for want of equity.

A trial was had on the issues joined on a stipulation of facts and the oral testimony of one member of the Senate. At the conclusion, the trial judge issued an exhaustive Memorandum Opinion from which we quote the following portions:

''The Arkansas Senate, in adopting Resolution No. 16, seemingly acted (according to the undisputed arguments of all parties) under the authority of Act 417 of 1947, Acts of Arkansas. Therefore, the first question considered by the Court in reaching its conclusion in this case is the applicability of this act to these circumstances. * * *

''Because it is the conclusion of the Court that 417 is not applicable to the facts of this case, it is not necessary to consider the other points of argument presented by the parties.''

The trial court then, in its decree, found "that the purported appointment of the defendant, Glenn F. Walther, by the Arkansas Senate, as a member of the Public Service Commission is illegal and void," and restrained him "from acting or purporting to act" as a member of the Commission—also restraining the other defendants from paying his salary.

We agree with the trial court's interpretation of the decisive issue presented in this case, and also agree with its determination of that issue:

On appeal, and in response to the one vital issue found by the trial court, appellant states:

Act 417 of 1947, Section 1 [Ark. Stat. Ann. § 6-601 (Repl. 1956)] applies to all Boards and Commissions, specifically including the Public Service Commission.

We are unable to agree with the interpretation appellant gives to the above statute. There are several reasons why we conclude this statute deals only with Honorary Boards and Commissions, and does not include the Public Service Commission. We note here that appellant does not, and cannot reasonably, contend that the Public Service Commission is an Honorary Commission.

(a) The title of said Act 417 contains this clause: "For regulation of sessions of Honorary Boards and Commissions." In *Stewart* v. *Shaver*, 207 Ark. 847 (p. 849), 183 S. W. 2d 299, this Court said:

"Result is that we must deal with an act wherein the title (which, of course, is not controlling, but may be looked to in ascertaining intent) * * *."

In the early case of *Reynolds* v. *Holland*, 35 Ark. 56 (p. 60) the Court said: "The title of this act affords the clue to its intention." Our research reveals that this

case (on the point stated) has been cited with approval in more than 10 decisions of this Court, including the case of *Pruitt* v. *Sebastian County Coal & Mining Co.,* 215 Ark. 673, 222 S. W. 2d 50. It is true that we have said that the language in the act must be considered, and, when clear, it is controlling.

(b)    We now look at some of the language in Act 417. Section 2 says the ''board or commission shall meet in regular session at least once during each bimonthly period;'' that the board shall notify the Governor who shall be eligible to attend and sit with the Commission; Section 3 provides that any member of the board who shall be absent from two successive regular meetings shall be subject to removal. Considering the above language, it would be unreasonable to say it was meant to apply to the Public Service Commission.

Appellant, in this connection, argues that if the legislature had intended for Act 417 to apply only to honorary boards, it would have obviously amended Act 1 of 1943, but we find no merit in such argument. Said Act 1 abolished all boards and commissions charged with ''charitable, penal or correctional institutions and institutions of higher learning of the State of Arkansas as now established'', and created sixteen other boards of nature. It is common knowledge of which we take judicial notice that since 1943 many honorary boards and commissions have been established which are in no way related to, or of the nature of, the ones mentioned above, and which may be subject to the provisions of Act 417.

Ark. Stat. Ann. § 73-101 (Repl. 1957) specifically deals with the appointments to the Arkansas Public Service Commission, and is applicable in this case. It provides, among other things, that the Governor shall appoint the commissioners—subject to approval of the Senate; that the terms will expire on January 14 of each year, and that: ''Each commissioner shall hold office during the term for which he was appointed and *until*

*his successor is appointed and qualified"*. (Emph. supplied.)

In view of what we have heretofore said, we conclude that appellant's appointment by the Senate was a nullity and that the decree of the trial court must be, and it is hereby, affirmed.

FOGLEMAN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. The majority's construction of Act 417 of 1947 to apply only to honorary boards and commissions ignores the practicalities of our form of government. By our constitution the legislature in a sixty-day session (with certain exceptions) is expected to appropriate money for the operation of the various state agencies, boards and departments and to provide the policy limits within which they are to operate. Almost every incoming governor seeks some type of reform legislation, and it appears to me that before a representative or senator is called upon to vote for the expenditure of money or the revamping of legislation he should be entitled to know who will be the appointees in the various departments, boards and commissions—*i. e.,* who is going to handle the money to be appropriated and administer the laws to be passed. Thus, under the construction placed upon Act 417 by the senate and appellant, the legislature could force the governor to get his administrative house in order before the legislature got down to any serious business.

Under the majority's decision the governor can nullify the senate's right of confirmation of many appointees by the simple expedient of waiting until after the expiration of the 60-day session of the legislature before making his appointments.

Therefore I dissent from the majority's construction of the Act because it does violence to both the plain language of the Act and the underlying practical reasons for its passage.

I also concur in the reasons stated by Justice Fogleman.

FOGLEMAN, J., concurs in this dissent.

John A. Fogleman, Justice, dissenting. The reasons given by the majority for sustaining the action of the trial court fail to take into consideration many previous decisions of this court and utilize others only for "proof-text" quotations without considering the background on which those decisions are based. I submit that Act 417 of 1947 is a complete, understandable, unambiguous statute and that its language speaks clearly for itself. In order to demonstrate, it becomes necessary to reproduce the full text of the act (omitting the severability clause), now appearing as Ark. Stat. Ann. §§ 6-601, 6-602, 6-603 (Repl. 1957).

SECTION 1. Within twenty days after the convening of the General Assembly in regular session, the Governor shall submit to the Senate for confirmation the names of such board or commission members and appointees as are by law required to be confirmed by the Senate. Provided, however, that the names of appointees to fill vacancies which occur after the first twenty days of the session of the General Assembly, but prior to the adjournment thereof, shall be submitted within five days from the date of each such vacancy. In the event of rejection by the Senate of an appointee whose name has been so submitted, the Governor shall, within ten days after receipt of written notice from the Secretary of the Senate of such rejection, submit the name of another appointee to fill such vacancy. In the event the Governor should, within the time herein required, fail to appoint, or fail to submit to the Senate for confirmation, the name of any appointee, the office shall be vacant, and the Senate shall proceed to fill the vacancy by an appointee of its own choice.

SECTION 2. Each such board or commission shall meet in regular session at least once during each bimonthly period, and shall meet in special session as often as its business may require. Except in those instances when such boards or commissions have under consideration privileged information concerning individuals, all meetings shall be open to the public.

The chairman, or secretary, of each such board or commission shall, in writing and not less than forty-eight hours in advance thereof, notify the Governor of each regular or special session, and the Governor, or a representative designated by him, shall be eligible to attend all such meetings, and to sit with such board or commission when privileged information is being considered; and the said secretary shall, within five days after each such meeting, furnish the Governor with a certified copy of the minutes thereof. Provided, however, the Governor may waive the time of notice herein required as it relates to special meetings.

SECTION 3. Any board or commission member who shall be absent from two successive regular meetings shall be subject to removal from such board or commission in the event he shall fail to present to the Governor a satisfactory excuse for such absence; and in that event, such unexcused absence shall constitute sufficient cause for removal.

Not one single word in the text of this act indicates that it relates only to ''honorary'' boards or commissions,[1]

---

[1]There is no clear definition of just what these are. Section 7-201 (Act 1 of 1943) mentions certain boards therein designated as honorary. What common understanding would encompass within the limitations of "honorary" boards and commissions is doubtful. It has been suggested that "honorary" boards and commissions are those whose members only receive a per diem instead of a salary. This does not fit the definition of "honorary" as given in Black's Law Dictionary.

nor is the word "honorary" mentioned anywhere. Especially is this obvious when § 1, the section in question, is considered.[2]

The first principle of statutory construction brushed aside by the majority is that the title of an act is no part of the act itself. *Laprairie* v. *City of Hot Springs*, 124 Ark. 346, 187 S. W. 442; *Special School District No. 33* v. *Howard*, 124 Ark. 475, 187 S. W. 444; *McLeod* v. *Purnell*, 164 Ark. 596, 262 S. W. 682; *Glover* v. *Henry*, 231 Ark. 111, 328 S. W. 2d 382.

The conclusion reached by the majority then, is contrary to many of our decisions, holding that the title of an act is not controlling in its construction. *Special School Dist. No. 33* v. *Howard*, 124 Ark. 475, 187 S. W. 444; *State* v. *White*, 170 Ark. 880, 281 S. W. 678; *City of Conway* v. *Summers*, 176 Ark. 796, 4 S .W. 2d 19; *Graves* v. *Burns*, 194 Ark. 177, 106 S. W. 2d 602; *Glover* v. *Henry*, 231 Ark. 111, 328 S. W. 2d 382; *Berry* v. *Gordon*, 237 Ark. 547, 376 S. W. 2d 279. As aptly put by Professor Robert M. Anderson, when the enacted portion of an act is clear and unambiguous, the orthodox view is that the search for meaning is at an end. "Drafting A Legislative Act In Arkansas," 2 Ark. L. Rev. 382, 386. I submit that the act in question clearly shows that it is intended to apply to all those board and commission members as are by law required to be confirmed by the Senate. Diligent search and examination reveals no doubt, or reason for doubt, whatever as to the application of the act. It is only when an examination of an act itself reveals doubt as to the legislative intent, because of ambiguities in its language, that the courts look to the title as an aid to construction. *Western Union Telegraph Co.* v. *State*, 82 Ark. 302, 101 S. W. 745; *Payne* v. *State*, 124 Ark. 20, 186 S. W. 612; *Laprairie* v. *City of Hot Springs,* 124 Ark. 346, 187 S. W. 442; *McLeod* v. *Purnell*, 164 Ark. 596, 262 S. W. 682; *Roscoe* v. *Water & Sewer Imp. Dist. No. 3*, 216 Ark. 109, 224

---

[2]Appellee admits that § 1, read in isolation, appears to be applicable generally.

S. W. 2d 356. This is the first instance I have found in the Arkansas cases wherein this court looked to a portion of an act's title to *find* a doubt or ambiguity and then *resolved* the doubt by looking to the same portion of the title. It is clear that this must be the case because the second clause of the title is the only place where application to honorary boards and commissions is suggested. It is *only* where the meaning of the lawmakers is in doubt that the language of the title of a statute has any force in interpretation of its meaning. *State* v. *White,* 170 Ark. 880, 281 S. W. 678; *City of Conway* v. *Summers,* 176 Ark. 796, 4 S. W. 2d 19; *Graves* v. *Burns,* 194 Ark. 177, 106 S. W. 2d 602. See, also, 2 Ark. L. Rev. 382, 386, Anderson. The legislature and courts of Arkansas have not been hamstrung by any limitation on subject matter by titles of acts since the adoption of the Constitution of 1874. *Laprairie* v. *City of Hot Springs, supra.* There is no good reason for the court to impose such a limitation now.

The next cardinal rule of statutory construction bypassed by the majority is that the title of an act cannot limit its application or that of a section thereof. *Drainage Dist. No.* 18 v. *McMeen,* 183 Ark. 984, 39 S. W. 2d 713. To say that Act 417 applies only to "honorary" commissions is to limit the application of the language of the act itself, particularly Section 1 which clearly applies to such board and commission members as are by law required to be confirmed by the Senate.

There is still another important rule of statutory construction ignored by the majority. When the title of an act is *repugnant* to its subject matter, the title *cannot be considered* in determining the legislative intention if the act itself is unambiguous. *Huff* v. *Udey,* 173 Ark. 464, 292 S. W. 693; *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909. Professor Anderson (2 Ark. L. Rev. 382, 385) makes its very clear that a title may not be employed to restrict the plain meaning of the purview, or enacted portion, and states that it is equally clear

that the purview will control in the event of a patent inconsistency.

Some examples of cases in which this court has refused to permit the title of an act to control its construction or limit its scope are:

*Special School District No.* 33 v. *Howard,* 124 Ark. 475, 187 S. W. 444, where the title of the act indicated that it was to repeal a previous act, but a perusal of the text disclosed that the act's application was limited to one county.[3]

*Drainage District No.* 18 v. *McMeen,* 183 Ark. 984, 39 S. W. 2d 713, where the title indicated that the act authorized the funding of bonded indebtedness of levee or drainage districts and the reassessment of benefits in such districts, but the section conferring authority to reassess benefits was held not to be limited to those districts proposing to refund indebtedness.

*Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909, where the title was "An Act To Fix Compensation Of County Officers" but the text included two sections dispensing with the requirement of publication of delinquent tax lists.

*Huff* v. *Udey.* 173 Ark. 464, 292 S. W. 693, where the title of a stock law indicated that it applied to certain portions of Pulaski County north of the Arkansas River, while the language of the text included other portions of the county.[3]

*Berry* v. *Gordon,* 237 Ark. 547, 376 S. W. 2d 279, where an act entitled "An Act To Make An Appropriation To Defray Expenses In Connection With Public Relations Activities Of Certain Constitutional Officers Of The Executive Department Of The State Of Arkan-

---

[3]These cases were decided before the constitutional prohibition against local and special legislation was adopted.

sas'' was held to authorize reimbursement for public relations expenditures of the Speaker of the House of Representatives, even though he was neither a constitutional officer nor a member of the executive department.

The lower court and the majority here have accepted as valid appellee's argument that reading of Sections 2 and 3 of Act 417 makes it clear that the General Assembly could not have intended that any part of the act apply to anything except ''honorary'' commissions. His argument is that it is unthinkable that a commission such as the Public Service Commission be required to notify the Governor of each regular or special session, or that he be authorized to remove a member who should be absent from two successive regular meetings.[4] The distinctions offered to support this contention are that the Public Service Commission holds hearings lasting several days, that its powers and duties are many and varied, and that its members are paid substantial salaries. By contrast, it is said that the members of an ''honorary'' commission are not paid a salary but receive a per diem only, and that responsibilities are less, requiring fewer meetings. It seems logical, rather than illogical, to me that one being paid a ''full-time'' salary for a full-time job having great responsibilities should be held to no less rigid requirements than one serving for the honor and having less important responsibilities. The removal provided for is certainly not mandatory but discretionary, as the defaulting member may present a satisfactory excuse to the Governor. The highest magistracy of the judicial department of government should not construe an act upon any assumption that the chief magistrate of the executive department would exercise authority under it arbitrarily and capriciously. In applying the test of logic, it seems more significant that the Governor have notice of sessions of an agency

[4] It is interesting to note that this provision has been changed so that three successive regular meetings must be missed instead of only two in order to create a vacancy and to eliminate part of the penalty for participation in unauthorized closed meetings. The Governor's discretionary power of removal for absence remains the same. Act 66 of 1961.

with the responsibilities of the Public Service Commission than that he have knowledge of sessions of commissions with much more limited powers and duties. It is also at least as important that he be given the benefit of having his representative present when an agency regulating public utilities affecting the lives of all our citizens goes under the cloak of privileged meetings as it is that he have this opportunity in the event of such meetings by agencies with a narrower scope. The propriety of these privileges should be emphasized since the commission may conduct its hearings anywhere in the state. Ark. Stat. Ann. § 73-104 (Repl. 1957). I feel that the construction making the act applicable to all commissions whose members must be confirmed by the Senate is much more logical than that of appellee, the trial court, and the majority. But even if I did not, I agree with appellee when he says: "The short answer is that the Courts may not frustrate the legislative will because it is 'illogical,' or because it evinces a policy decision with which they disagree."

We should also consider and respect the fact that the General Assembly has by its action construed the act in a manner contrary to the majority opinion. While this may not be controlling on us, it should certainly be persuasive. If an earlier act is ambiguous, subsequent action by the legislative branch indicative of its intent or meaning is entitled to great weight when the courts are called upon to interpret the prior law. *Arnold* v. *City of Jonesboro*, 227 Ark. 832, 302 S.W. 2d 91. See, also, *United States* v. *Bowling*, 256 U. S. 484, 41 S. Ct. 561, 65 L. Ed. 1054 (1921); *California School Township* v. *Kellogg*, 109 Ind. App. 117, 33 N. E. 2d 363 (1941); *Stanford* v. *Butler*, 142 Tex. 692, 181 S. W. 2d 269 (1944); *Chatlos* v. *McGoldrick*, 302 N. Y. 380, 98 N. E. 2d 567 (1951); 2 Sutherland Statutory Construction, 3d. Ed., § 5110.

If the title of the act were properly to be considered, it is significant that its first clause relates to the "Manner in which Certain Appointees of the Governor Shall be submitted to the Senate for Confirmation," while its second purports only to be "For Regulations of Ses-

*sions* of Honorary Boards and Commissions and for other Purposes.'' [Emphasis mine] Thus, even the title does not indicate an intent to limit the effect of Section 1 to ''honorary'' boards and commissions. The obvious legislative intention of Section 1 is to minimize gubernatorial evasion of the requirement of senatorial confirmation of appointees by utilization of incumbent holdovers and interim appointments.

I submit that this court has, in this decision, inappropriately and in disregard of the separation of powers, imposed its own sense of propriety upon the General Assembly, an equally independent coordinate department of government. The wisdom, advisability, expediency, propriety, and necessity of particular legislation are matters solely for consideration of the legislative department and are not for judicial determination. *Ward* v. *Bailey,* 198 Ark. 27, 127 S. W. 2d 272; *Albright* v. *Karston,* 206 Ark. 307, 176 S. W. 2d 421; *Reed* v. *Hundley,* 208 Ark. 924, 188 S. W. 2d 117; *Fugett* v. *State,* 208 Ark. 979, 188 S. W. 2d 641; *Cook* v. *Arkansas Missouri Power Corp.,* 209 Ark. 750, 192 S. W. 2d 210; *Longstreth* v. *Cook,* 215 Ark. 72, 220 S. W. 2d 433; *Beaumont* v. *Faubus,* 239 Ark. 801, 394 S. W. 2d 478.

I submit that the cases cited by the majority as authority for their application of the act's title do not in anywise transgress the rules of construction set out above. *Reynolds* v. *Holland,* 35 Ark. 56, found the title to be the clue to the legislative intention of the act there under consideration when its text, literally construed, would have failed in the legislative purpose to establish a county boundary line and would have made the act unconstitutional. There was no indication that the title to every act furnished the clue to its intention. In *Pruitt* v. *Sebastian County Coal & Mining Co.,* 215 Ark. 673, 222 S. W. 2d 50, the court referred to the titles of certain acts only to reinforce its conclusion that there was nothing in any of the three acts to support a contention that by implication they amended or repealed previous acts fixing a county line. In *Stewart* v. *Shaver,* 207 Ark.

847, 183 S. W. 2d 299, also, the title was used as a bulwark for the conclusion that the act in question applied only to primary elections because the title and the first 11 sections of an act dealt with primary elections, the 12th imposed penalties, and the 14th was the emergency clause, while the 13th, in addition to stating a severance clause, stated that the act should apply to all general and special elections. The court found that Section 13 only applied to general and special primary elections. While the court's conclusion there seems to have been clearly indicated by the language of the act itself, the most that can be said is that resort was had to the title to resolve an ambiguity in the text of the act. In both the *Pruitt* and *Stewart* cases, the court said that the title was not controlling.

Because I differ with the majority on the point on which they affirm the chancellor, and because I would reverse the decree, it is necessary that I state my reasons for rejecting other arguments advanced in support of this holding. The obvious purpose of the General Assembly was to minimize gubernatorial bypassing of the requirement of senate confirmation of appointments by hold-over service and interim appointments.

1. It is said that the Senate's appointment could be of no effect because (1) a vacancy must exist before the act is applicable, and (2) Ark. Stat. Ann. § 73-101 vests the power of appointment in the Governor. The lower court says that the act provides for three classifications or conditions under which the Senate may appoint:

(a) to fill vacancies existing prior to convening of regular sessions not filled by the Governor within 20 days after the convening of the General Assembly;

(b) to fill vacancies occurring after the first 20 days of the session but prior to adjournment if Governor fails to submit the name of a nominee to the Senate

for confirmation within five days from the date of vacancy;

(c) where an appointee has been rejected and the Governor has failed to submit the name of another within 10 days after receipt of notice from the Secretary of the Senate. The appellee contends that the whole premise of this scheme is the existence of a vacancy and that no vacancy existed because the incumbent held over.

The complete answer is that the first sentence of Section 1 does not mention or relate to a vacancy in any way. The proviso in the second sentence relates to vacancies, as does the third sentence. The fourth sentence then, declares a vacancy to exist upon failure of the Governor to act within the allotted time. It would be an absurdity to declare a vacancy in an office already vacant. The lower court's construction would render this fourth sentence a meaningless and useless appendage. The only construction of the act which would make all its words meaningful would require that:

(a) Within 20 days after convening of the General Assembly, the Governor must submit the names of all board and commission members whose confirmation by the Senate is required.[5] (This would cover not only all vacancies in office, but all replacements for those whose terms had expired.)

(b) The Governor must submit to the Senate the names of proposed appointees to fill vacancies[6] which occur after the first 20 days of a regular session but prior to adjournment thereof within five days from the date of the vacancy.

[5]Act 235 of 1967 clearly recognizes that there have been gubernatorial appointments where Senate confirmations were not required.

[6]This is clearly a vacancy by death, resignation or removal, as defined in *Justice* v. *Campbell*, 241 Ark. 802, 410 S. W. 2d 601, or as provided by statute.

(c) In the event of Senate rejection of an appointee whose name was submitted within five days after a vacancy, the Governor shall submit another within 10 days.

In the event the Governor shall fail to submit the name of an appointee for confirmation within the applicable time limit, then the office becomes vacant, and the Senate may appoint.[7]

2. Appellee contends that the resolution by which Walther was appointed by the Senate was invalid because it was not read three different times without suspension of the rules. He contends that this is required by Article V, § 22. This section states that every *bill* must be read at length on three different days in each house, unless the rules are suspended by two-thirds of the house. It is clear from reading other sections of our constitution that the scope of the term "bills" is limited to proposals for legislative acts and that the "reading" requirement is not intended to apply to resolutions. Article V, § 21 requires that no *law* be passed except by *bill*. Article V, § 29 prohibits the withdrawal of money from the treasury except in pursuance of specific appropriation by *law* and requires that the purpose of the appropriation be distinctly stated in the *bill*. Section 41 prohibits the incurring of expense by either house except by *bill* passed by both houses and approved by the Governor. Article VI, § 15 covers the veto power and speaks of a *bill* being presented to the Governor for his approval and of its becoming *law* if not returned in time or if it should be passed over his veto. Article VI, § 16 specifically treats concurrent resolutions, requiring gubernatorial approval of those in which the concurrence of both houses is required, and provides for pass-

---

[7] Under both this construction and that of the chancellor, the Governor would have to submit the name of a proposed appointee to fill a vacancy occurring on the 20th day on that same day. While this might not seem logical, we are only to choose a logical construction when an act or provision is capable of more than one construction.

age over the Governor's disapproval "according to the rules and limitations prescribed in the case of a *bill*." [Emphasis mine] It seems clear that the framers of the constitution recognized the difference between a bill and a resolution and, therefore, would have specifically mentioned resolutions in connection with any constitutional requirements they intended to impose for action thereon. For the fields of legislation and constitutional law, Black's Law Dictionary gives this definition of "bill":

> The word means a draft of an act of the legislature before it becomes a law; a proposed or projected law. A draft of an act presented to the legislature, but not enacted.

3. Another argument against the validity of the appointment advanced by appellee is that the vote was not taken viva voce and entered upon the journal as required by Article V, § 14 of the Arkansas Constitution. *Viva voce* means "with the living voice;" by word of mouth or orally. Webster's New International Dictionary, 2d & 3d Editions; Random House, Unabridged Dictionary of the English Language; 92 C. J. S. 1020. According to Black's Law Dictionary: "As descriptive of a species of voting, it signifies voting by speech or outcry, as distinguished from voting by a written or printed ballot." It has been held that there are three methods of making an appointment by viva voce vote. They are:

1. by calling the roll with each member naming his choice;

2. by placing candidates in nomination and then calling the roll of members;

3. by naming a candidate by resolution and the members orally voting for it.

See, *In re Brearton,* 44 Misc. Rep. 247, 89 NYS 893 (1904), where the court held that a statute requiring that appointments by a city council be by viva voce vote

was complied with by actions taken by both the second and third methods, one of which was utilized at one meeting and the other at a subsequent meeting of the council. We must presume that the vote on Senate Resolution No. 16 was by viva voce vote, even though the journal does not specifically say so. It is a well recognized rule that the courts must presume that constitutional procedural requirements have been followed by our General Assembly unless the legislative journals themselves show to the contrary. *Huff* v. *Udey*, 173 Ark. 464, 292 S. W. 693; *Davis* v. *Road Improvement Dist. No. 7*, 162 Ark. 98, 257 S. W. 724; *Ewing* v. *McGehee*, 169 Ark. 448, 275 S. W. 766.

The direction that the vote be entered on the journals does not require more than a declaration of the result and is complied with by the showing in the Senate Journal that the resolution was adopted. Had the framers of our constitution intended, as appellee contends, that the yeas and nays be recorded in the journal, they would have said so in those words, as they did in Article V, §§ 12 and 22.

4. The trial judge indicated that no vacancy existed in the position at the time of the senatorial appointment. I disagree. The clear provision of Section 1 of the act is to declare a vacancy to exist when the Governor fails to submit the name of his nominee within the time allotted. The legislature's power to say when an office is vacant can only be limited by specific constitutional provision. *State* v. *Lansing*, 46 Neb. 514, 64 N. W. 1104, 35 LRA 124 (1895); *State* v. *Christensen*, 84 Utah 185, 35 P. 2d 775 (1934). See, also, 67 C. J. S., Officers, § 50b; 42 Am. Jur., Public Officers, § 132. This power is particularly appropriate when the office is one which was created by the General Assembly. *Townley* v. *Hartsfield*, 113 Ark. 253, 168 S. W. 140. The case of *Justice* v. *Campbell*, 241 Ark. 802, 410 S. W. 2d 601, relied upon by appellee, has no application because this court had previously said that in the sense of the constitutional provision (Amendment 29) relating to the filling of va-

cancies in elective offices, a vacancy only existed when there was no incumbent. This specific constitutional provision then prevented the General Assembly from declaring a vacancy to exist otherwise. There is no such constitutional restriction here.

5. Finally, it is contended that appellant's appointment was invalid because Section 1 of Act 417 (Ark. Stat. Ann. § 6-601) is an unconstitutional encroachment on the executive branch in violation of Article 4, §§ 1 and 2 of the Constitution. This argument is based upon the contention that there is an inherent power to appoint in the executive branch of the government, and that the act violates the separation of powers provided for by those constitutional provisions. Whatever may be the rule in other states, this contention is without merit in Arkansas. The matter was settled in *Cox* v. *State,* 72 Ark. 94, 78 S. W. 756, where there was an appeal from a judgment of ouster in a *quo warranto* proceeding. The office involved was the "State Capitol Commission" created by the General Assembly to carry into effect the purposes of Act 146 of 1903. The members of this commission were appointed in a joint session of the Senate and House of Representatives, pursuant to the act. The Governor ignored the act and appointed five commissioners to carry out the purposes of the act upon the identical contention made by the appellee here. This court said:

"*First as to the power of the legislature to make appointments to office.* In the United States the general power to appoint officers is not inherent in the executive or in any other branch of the government. It is a prerogative of the people, to be exercised by them or that department of the state to which it has been confided by the constitution. The legislature has, we think, power to make appointments to office unless its powers in that respect are restricted by the constitution, either expressly or by implication. *Hovey* v. *State,* 119 Ind. 386, 21 N. E. 890; *People* v. *Hurlbut,* 24 Mich. 64, 9 Am.

Rep. 103; *State* v. *George,* 22 Oregon 142, 29 Pac. 356, 29 Am. St. Rep. 586; *People* v. *Freeman,* 80 Cal. 233, 22 Pac. 173, 13 Am. St. Rep. 122, and extended and full discussion found in note; Cooley, Const. Lim. (6th Ed.) 104-133; 23 Am. & Eng. Enc. Law (2d Ed.) 340.

"Now, an examination of our constitution will show that it not only contains no general or express prohibition against the exercise of the appointing power by the legislature, but it affirmatively shows that it was the intention of the framers of the constitution to permit the legislature to exercise such power to a limited extent. This is shown by the provision to the effect that if in an election for governor, secretary of state, treasurer, auditor or attorney general, two or more candidates for either of said offices shall receive an equal number of votes, then one of those persons receiving the highest votes 'shall be chosen by the joint vote of both houses of the General Assembly.' Art. 6, § 3, Const. 1874. It is shown also by the section which declares that 'whenever an officer, civil or military, shall be appointed by the joint or concurrent vote of both houses, or by the separate vote of either house of the General Assembly, the vote shall be taken *viva voce,* and entered on the journals.' Art. 5, § 14. The contention that this section refers only to the officers of the General Assembly, such as clerks, pages and others necessary to discharge the duties of that body, does not seem to be borne out by the language used. Why should it speak of the appointment of officers, 'civil or military,' if that was the meaning? We do not recall any military officer attached to the legislature, or to either of its branches, and we think that the language used is too broad to justify the construction contended for. It is, of course, not usual to have vacancies in office filled by appointment made by the General Assembly, and under our constitution there are many offices which could not be filled in that way. But, though not the usual method, the language of the constitution above quoted shows that the

framers of that instrument intended that it might be done in some cases not otherwise provided for, and this is not the only instance in which such power has been exercised by the legislature. It is well known that the last legislature made provision for digesting the statutes of the state, and appointed both a digester and an examiner to do the work required. The act by which these appointments were made by the legislature was approved by the governor, who thus inferentially approved the contention that the legislature has in some cases power to make appointments, and that a statute which attempts to confer this power is not necessarily unconstitutional and void on that account. Acts of 1903, p. 414. We are, then, of the opinion from the language of the constitution itself that the legislature may to some extent, in cases not otherwise provided for, exercise the appointing power. It is also plain, we think, that the governor has not inherent power, by virtue of his position as chief executive of the state, to make these appointments. If he has such power, it must be because the constitution has conferred it upon him, and thus, inferentially at least, forbidden the legislature to make them.

"The next question, then, is *whether the power to appoint commissioners to serve on a board such as the one created by this act has been conferred upon the governor by the constitution in such a way as to prohibit the legislature from making the appointments.* There are only two sections of the constitution quoted by counsel for appellants as conferring this power upon the governor. One of these is as follows: 'When any office, from any cause, may become vacant, and no mode is provided by the constitution and laws for filling such vacancy, the governor shall have the power to fill the same by granting a commission, which shall expire when the person elected to fill said office at the next general election shall be duly qualified.' Art. 6, § 23. The other section quoted is one of the amendments to the constitution, and is in the following language, to-wit: 'The

governor shall, in case a vacancy occurs in any state, district, county or township office in the state, either by death, resignation or otherwise, fill the same by appointment, to be in force until the next general election.' Both of these provisions, by their terms, plainly refer to elective offices—to those state, county, township and other offices the incumbents of which are selected by election at regular intervals. This is shown by the fact that each of those sections limits the term of the appointee of the governor appointed under them to the time when the person elected to the office at the next general election shall qualify and assume the duties of the office, thus making it plain that they refer to elective offices.''

The above case has been cited in subsequent cases, some of which are relied upon by appellees. None of these cases limit the application of the doctrine set out in that opinion, but recognize it as correct. In *Davis* v. *Wilson*, 183 Ark. 271, 35 S. W. 2d 1020, the *Cox* case is referred to as establishing the fact that the Governor has no inherent power of appointment, and that none was vested in him by constitutional provisions limited to elective officers only.

In *Oates* v. *Rogers*, 201 Ark. 335, 144 S. W. 2d 457 (relied upon by appellee), the question was constitutionality of a statute purporting to create the separate office of collector in Pulaski County and attempting to place the power of appointment of a collector in certain members of the judiciary. The statute was held unconstitutional, not because of any inherent power of appointment by the Governor, but because of violation of the doctrine of separation of powers by the attempted imposition upon the judiciary of duties not belonging to the judicial department and for the further reason that the term of office provided for was in excess of constitutional limits. In that case, the court clearly recognized the validity of the doctrine in *Cox* v. *State, supra,* when it said:

"We need not speculate what the situation would have been if the General Assembly had named a collector, or had undertaken to delegate this authority to a person or group of persons not of the judiciary. *Cox* v. *State*, 72 Ark. 94, 78 S. W. 756, 105 Am. St. Rep. 17, is authority for the proposition that the Governor has no inherent power by virtue of his office or of Const. art. 6, Sec. 23, to appoint certain commissioners, and that the Legislature has power to make appointments to office unless its powers in that respect are restricted by the Constitution, either expressly or by implication."

We do not find this same limitation upon the legislative branch because a state's constitution is not an enabling act nor a grant of enumerated powers, and the legislature may rightfully exercise the power of the people, subject only to limitations and restrictions fixed by the constitutions of the United States and of the state. *St. Louis I. M. & S. Ry. Co.* v. *State*, 99 Ark. 1, 136 S. W. 938. *Cox* v. *State, supra*, was cited in *Fulkerson* v. *Refunding Board*, 201 Ark. 957, 147 S. W. 2d 980, as authority for the statement that the General Assembly has the power to name the persons, whether officials or not, who shall execute the laws it may pass.

Appellee also relies upon *Howell* v. *Howell*, 213 Ark. 298, 208 S. W. 2d 22, but that opinion is not authority for their contention. It was clearly said that the limitation in the *Cox* case had no application there because the vacancy in the office of chancellor was to be filled by the Governor under the authority of the constitution, chancellors being state officers under the constitution. See Amendment No. 29.

It is well known that the General Assembly has, in numerous instances, named commissioners of improvement districts upon creating such districts. See, *e. g.*, Act 569 of 1923; Act 19 of 1893; Road Acts of 1919. This court has approved this practice as being within the power of the General Assembly. *Biggs* v. *Stout*, 168 Ark.

809, 271 S. W. 458; *Reitzammer* v. *Desha Road Improvement Dist. No. 2*, 139 Ark. 168, 213 S. W. 773; *Campbell* v. *Beaver Bayou Drainage Dist.*, 215 Ark. 187, 219 S. W. 2d 934. The insertion of Art. V, § 14 of the Constitution of 1874, governing the method of voting on appointments by the General Assembly, or either house thereof, is positive proof that it was contemplated that appointments would be made by the legislative branch.

In conclusion, I humbly submit that we should give due regard to the statement contained in *Walker* v. *Allred*, 179 Ark. 1104, 20 S. W. 2d 116, where an attempt was made to limit the application of an act by a statement in its title, where we said:

"* * * It is a well-settled rule of law that where the will of the Legislature is clearly expressed, the court should adhere to the literal expression of the enactment without regard to consequences, and every construction derived from a consideration of its reason and spirit should be discarded, for it is dangerous to interpret a statute contrary to its express words where it is not obvious that the makers meant something different from what they have said. *Bennett* v. *Worthington*, 24 Ark. 487; *M. L. R. R. Co.* v. *Adams*, 46 Ark. 159; *Ry. Co.* v. *B'Shears*, 59 Ark. 243, 27 S. W. 2."

I would reverse the decree of the lower court and hold the appointment of appellant valid.

I am authorized to state that Byrd, J., joins in this dissent.